HUMPHREY *v.* PEGUES.

An act of assembly of a State passed in 1851 to incorporate a railroad company chartered a corporation, but did not exempt its property from taxation. An act passed in 1855 to amend its *charter* did exempt it. In 1863 an act was passed conferring on a company which had been incorporated in 1849 to build a railroad, but which had never yet found inducements sufficient to make it build the road, all the rights, powers, and privileges "granted by the *charter*" of the first-named road. *Held:*
1st. That the property of the second road was made, by the act of 1863, exempt from taxation.
2d. That the legislature could not repeal the act of 1863 so as to subject it to taxation.

ERROR to the Circuit Court for the District of South Carolina; the case being thus:

On the 16th of December, 1851, the legislature of South Carolina, by "an act to *incorporate* the Northeastern Railroad Company," chartered the corporation now known by that name. This act contained no exemption of the company's property from taxation, and by its terms was to continue in force for fifty years from the ratification thereof.

On the 19th of December, 1855, the same legislature passed another act, entitled "An act to *amend the charter* of the Northeastern Railroad Company, and for other purposes." This act enacted:

"SECTION 1. That the stock of the Northeastern Railroad

Company and the real estate that it now owns, or may hereafter acquire, which is connected with or subservient to the works, authorized in the charter of the said company, *shall be, and the same is hereby, exempted from all taxation* during the continuance of the present charter of the said company."

Prior to the date of either of these acts, that is to say, on the 19th of December, 1849, the same legislature had, by an act entitled "An act to charter the Cheraw and Darlington Railroad Company," incorporated the company of that name. This act, after authorizing the formation of the company and the raising of the stock, provided thus:

"SECTION 5. That *for the purpose of organizing and forming this company* . . . all the powers, rights, and privileges granted by the *charter* of the *Wilmington and Manchester Railroad Company* to that company shall be and are hereby granted to the Cheraw and Darlington Railroad Company," &c.

The powers, rights, and privileges here referred to as granted by the charter of the Wilmington and Manchester Railroad Company, whose name is above italicized, to that company, did not include any exemption of its property from taxation.

The Cheraw and Darlington Railroad Company thus, as above mentioned, incorporated in 1849, had not up to the 17th of December, 1863, built its road; and on the day and year last mentioned the same legislature amended its charter by the passage of the act which thus enacted:

"SECTION 1. That section 5 of an act entitled 'An act to charter the Cheraw and Darlington Railroad Company,' ratified the 19th day of December, A.D. 1849, be amended so as to read as follows, to wit:

"That all the powers, rights, and privileges granted by the charter of the Northeastern Railroad Company are hereby granted to the Cheraw and Darlington Railroad Company, and subject to the conditions therein contained."

Soon after this amendatory act of 1863 was passed, the Cheraw and Darlington Railroad, which had been lying dormant since 1849, was built and put in operation.

These different enactments above mentioned being in

force, the State officers of counties in South Carolina where the Cheraw and Darlington Railroad was situate, acting under the authority of the legislature of the State, imposed certain taxes on the stock and property of that company, and were proceeding to enforce payment of them, when one Pegues, a stockholder in Mississippi, filed a bill in the court below praying an injunction to restrain the collection. The court granted the injunction, and from this, its action, the county officers appealed. The question was whether (as Pegues, the complainant, contended) the act of December 19th, 1855, "to amend the charter of the Northeastern Railroad Company," &c., and exempting its property from taxation, formed a *part of its charter* when, on the 17th of December, 1863, the privileges granted to *that* company were conferred on the Cheraw and Darlington company; or whether (as the State of South Carolina contended) the privileges thus conferred were limited to those granted to the Northeastern company by its original charter or act of incorporation, passed in 1851, by which no exemption from taxation was conferred.

*Mr. D. H. Chamberlain, for the State officers, appellants,* contended that an exemption from taxation was never to be implied; that nothing less than a clear intention on the part of the legislature—an intention expressed in terms which admit no other reasonable construction—would suffice to sustain a privilege so valuable and so far-reaching; that as was shown by the words—"an act to amend the *charter* of the Northeastern Company"—in the amendatory act of 1855, it was the act of 1851 incorporating the company which constituted its *charter;* and that when the act of 1863 gave to the Cheraw and Darlington Railroad all the powers, rights, and privileges granted by the *charter* of the Northeastern Railroad Company, it gave it only the powers, rights, and privileges granted by that act of 1851.

In addition to this, that the original grant of powers, rights, and privileges made to the Cheraw and Darlington road by the section 5 of the act of December 19th, 1849, to

charter that road, was "for the purpose of *organizing and forming* that company," and that when this act was amended by substituting the new words contained in the amendatory act of the 17th of December, 1863, granting other privileges —the road not yet being so much as undertaken—the original purpose "of organizing and forming the company" still remained; and that it was a construction such as, in regard to a law exempting property from taxation, was not to be made, that would extend the interpretation so much further, as the complainant sought to do.

The learned counsel also contended that if this view were not sound; and if the property of the Cheraw and Darlington Railroad were by the act of 1863 exempted, yet the right to repeal or amend any previously existing exemption from taxation was inherent and inextinguishable in the State; that the power of taxation was one of the highest and most vitally necessary powers of sovereignty, and that if one legislature could take it from all subsequent legislatures, government could not go on.

*Mr. T. G. Barker, contra.*

Mr. Justice HUNT (having quoted the several statutes above given) delivered the opinion of the court.

The stockholders of the Cheraw and Darlington Company contend that the act of the 19th of December, 1855, entitled "An act to amend the charter of the Northeastern Railroad Company," &c., formed a part of the charter of the Northeastern Company in 1863, when the privileges conferred upon that company were granted to the Cheraw and Darlington Company.

The State contends that the privileges thus granted were limited to those conferred upon the Northeastern by its original charter or act of incorporation, passed in 1851.

All the "privileges," as well as powers and rights of the prior company, were granted to the latter. A more important or more comprehensive privilege than a perpetual immunity from taxation can scarcely be imagined. It con-

tains the essential idea of a peculiar benefit or advantage, of a special exemption from a burden falling upon others.

There is nothing in the terms of the statute of 1863 to indicate that the legislature intended to limit the privileges conferred upon the Cheraw Company to those granted to the Northeastern Company by its original act of incorporation, and to exclude the important privileges contained in the amending act. The charter of the Northeastern Company, as it existed in 1863, was based upon the two acts of the legislature, passed in 1851 and 1855, respectively. The first act was entitled an " act to incorporate" the Northeastern Company. The latter act was entitled " an act to amend the charter of the Northeastern Company." A charter, in the sense here used, is an instrument or authority from the sovereign power, bestowing rights or privileges; as it is briefly expressed, it is an act of incorporation. Such was the obvious understanding of the word by the legislature of South Carolina. The first act was expressed as creating the incorporation of the company; the second, using a synonymous expression, purported to amend its charter. The words charter and act of incorporation were used convertibly. Whether it be said that the rights and privileges conferred upon the Northeastern, as they stood in 1863, existed in its charter or were derived from its incorporation amounts to the same thing. We have no doubt that all of them were intended to be granted to the Cheraw Company by the act of that year. The charter or incorporation of 1851 had been amended in 1855, and by an act which purported in its title not to create an original authority, but by amending the original charter to bestow additional powers upon the company. After the passage of the amended act, the Northeastern was, in law, as if it had originally been chartered, with all the rights, powers, and privileges conferred upon it by the act of 1855. Such was the legal effect of the amendment; and such, no doubt, was the understanding of its effect by the legislature of South Carolina, when, in 1863, they conferred all its powers and privileges upon the Cheraw Company. The case shows that from 1849 to 1863 no suf-

ficient inducements had been found to procure the building of the Cheraw road. We are not advised what other powers and privileges were then and there conferred upon it in addition to the exemption we are considering. But this exemption was conferred; an exemption that must have been understood by the least reflecting person as being of immense value to all concerned in the road. The road was soon afterwards built, and has since then been and now is in operation. These facts serve to show—first, that there was, in this instance, the consideration that at any time exists for the granting by the legislature of such privilege to aid the acceptance of the same and the building of the road; and, secondly, the intention of the legislature, by omitting a reference to the original act of incorporation, to grant all the powers and privileges that had been at any time conferred upon the Northeastern Company.

Another question is raised, to wit: That a legislature does not possess the power to grant to a corporation a perpetual immunity from taxation. It is said that the power of taxation is among the highest powers of a sovereign State; that its exercise is a political necessity, without which the State must cease to exist, and that it is not competent for one legislature, by binding its successors, to compass the death of the State. It is too late to raise this question in this court. It has been held that the legislature has the power to bind the State in relinquishing its power to tax a corporation.* It has been held that such a provision in the charter of an incorporation constitutes a contract which the State may not subsequently impair.† These doctrines have been reiterated and reaffirmed so recently as the year 1871, in an opinion delivered by Mr. Justice Davis in the case of *The Wilmington Railroad* v. *Reid*.‡ They must be considered as settled in this court.                    JUDGMENT AFFIRMED.

---

* Jefferson Bank *v.* Skelly, 1 Black, 436.

† Providence Bank *v.* Billings, 4 Peters, 514; Dartmouth College *v.* Woodward, 4 Wheaton, 518; The Binghamton Bridge, 3 Wallace, 51.

‡ 13 Wallace, 264.