## FORD MOTOR CO. *v.* DEPARTMENT OF TREASURY OF INDIANA ET AL.

No. 75. Argued December 7, 1944.—Decided January 8, 1945.

*Mr. Merle H. Miller* for petitioner.

*Messrs. Winslow Van Horne* and *John J. McShane,* Deputy Attorneys General of Indiana, with whom *Mr. James A. Emmert,* Attorney General, was on the brief, for respondents.

MR. JUSTICE REED delivered the opinion of the Court.

This writ brings here for review an action by petitioner, a non-resident foreign manufacturing corporation, against the respondents, the department of treasury of the State of Indiana and M. Clifford Townsend, Joseph M. Robertson and Frank G. Thompson, the Governor, Treasurer and Auditor, respectively, of the State of Indiana, who "together" constituted the board of the department of treasury.[1] Petitioner seeks a refund of gross income taxes paid to the department and measured by sales claimed by the state to have occurred in Indiana.[2] Jurisdiction of the United States District Court is founded on allegations of the violation of Article I, § 8, the Commerce Clause, and

---

[1] We need not consider the present status of the board of the department of treasury as § 64–2614, Burns, Indiana Stat. Ann. (1943 Replacement), provides for suit against the "department." See Indiana Acts, 1933, ch. 4, § 13; Indiana Acts, 1941, ch. 4 and ch. 13, §§ 2, 8; *Tucker* v. *State,* 218 Ind. 614, 35 N. E. 2d 270.

[2] Burns, Indiana Stat. Ann. § 64–2602 (1943 Replacement).

the Fourteenth Amendment of the Constitution. The state statutory procedure for obtaining a refund which petitioner followed is set forth in § 64–2614 (a) of the Indiana statutes.[3]

The District Court denied recovery. The Circuit Court of Appeals affirmed.[4] Certiorari was granted[5] on peti-

---

[3] Section 64–2614 (a) of Burns, Indiana Stat. Ann. (1943 Replacement) provides:

"If any person considers that he has paid to the department for any year an amount which is in excess of the amount legally due from him for that year under the terms of this act, he may apply to the department, by verified petition in writing, at any time within three (3) years after the payment for the annual period for which such alleged overpayment has been made, for a correction of the amount so paid by him to the department, and for a refund of the amount which he claims has been illegally collected and paid. In such petition, he shall set forth the amount which he claims should be refunded, and the reasons for such claim. The department shall promptly consider such petition, and may grant such refund, in whole or in part, or may wholly deny the same. If denied in whole or in part, the petitioner shall be forthwith notified of such action of the department, and of its grounds for such denial. The department may, in its discretion, grant the petitioner a further hearing with respect to such petition. Any person improperly charged with any tax provided for under the terms of this act, and required to pay the same, may recover any amount thus improperly collected, together with interest, in any proper action or suit against the department in any court of competent jurisdiction; and the circuit or superior court of the county in which the taxpayer resides or is located shall have original jurisdiction of action to recover any amount improperly collected: Provided, however, That no court shall entertain such a suit, unless the taxpayer shall show that he has filed a petition for refund with the department, as hereinabove provided, within one (1) year prior to the institution of the action: Provided, further, That no such suit shall be entertained until the expiration of six (6) months from the time of filing such petition for refund with the department, unless in the meantime, the department shall have notified the petitioner, in writing, of the denial of such petition. . . ."

[4] *Ford Motor Co.* v. *Department of Treasury*, 141 F. 2d 24.

[5] 322 U. S. 721.

tioner's assertion of error in that the Circuit Court of Appeals decided an important question of local law probably in conflict with an applicable decision of the Supreme Court of Indiana. *Department of Treasury* v. *International Harvester Co.*, 221 Ind. 416, 47 N. E. 2d 150. As we conclude that petitioner's action could not be maintained in the federal court, we do not decide the merits of the issue.

Petitioner's right to maintain this action in a federal court depends, first, upon whether the action is against the State of Indiana or against an individual. Secondly, if the action is against the state, whether the state has consented to be sued in the federal courts. Recently these questions were discussed in *Great Northern Insurance Co.* v. *Read,* 322 U. S. 47.

In that case this Court held that as the suit was against a state official as such, through proceedings which were authorized by statute to compel him to carry out with state funds the state's agreement to reimburse moneys illegally exacted under color of the tax power, the suit was one against the state. We said that such a suit was clearly distinguishable from actions against a tax collector to recover a personal judgment for money wrongfully collected under color of state law. 322 U. S. 47, 50–51. Where relief is sought under general law from wrongful acts of state officials, the sovereign's immunity under the Eleventh Amendment does not extend to wrongful individual action, and the citizen is allowed a remedy against the wrongdoer personally. *Atchison, T. & S. F. R. Co.* v. *O'Connor,* 223 U. S. 280; cf. *Matthews* v. *Rodgers,* 284 U. S. 521, 528. Where, however, an action is authorized by statute against a state officer in his official capacity and constituting an action against the state, the Eleventh Amendment operates to bar suit except in so far as the statute waives state immunity from suit. *Smith* v.

*Reeves,* 178 U. S. 436; *Great Northern Insurance Co.* v. *Read,* 322 U. S. 47.

We are of the opinion that petitioner's suit in the instant case against the department and the individuals as the board constitutes an action against the State of Indiana. A state statute prescribed the procedure for obtaining refund of taxes illegally exacted, providing that a taxpayer first file a timely application for a refund with the state department of treasury.[6] Upon denial of such claim, the taxpayer is authorized to recover the illegal exaction in an action against the "department." Judgment obtained in such action is to be satisfied by payment "out of any funds in the state treasury."[7] This section clearly provides for an action against the state, as opposed to one against the collecting official individually. No state court decision has been called to our attention which would indicate that a different interpretation of this statute has been adopted by state courts.

Petitioner's suit in the federal District Court is based on § 64–2614 (a) of the Indiana statutes and therefore constitutes an action against the state, not against the collecting official as an individual. Petitioner brought its action in strict accord with § 64–2614 (a). The action is against the state's department of treasury. The complaint carefully details compliance with the provisions of § 64–2614 (a) which require a timely application for refund to the department as a prerequisite to a court action authorized in the section. It is true the petitioner in the present proceeding joined the Governor, Treasurer and Auditor of the state as defendants, who "together constitute the Board of Department of Treasury of the State of Indiana." But, they were joined as the collective repre-

---

[6] See note 3 *supra*, § 64–2614 (a).

[7] Burns, Indiana Stat. Ann. § 64–2614 (b) (1943 Replacement).

sentatives of the state, not as individuals against whom a personal judgment is sought. The petitioner did not assert any claim to a personal judgment against these individuals for the contested tax payments. The petitioner's claim is for a "refund," not for the imposition of personal liability on individual defendants for sums illegally exacted. We have previously held that the nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding. *Ex parte Ayers,* 123 U. S. 443, 490–99; *Ex parte New York,* 256 U. S. 490, 500; *Worcester County Trust Co.* v. *Riley,* 302 U. S. 292, 296–98. And when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants. *Smith* v. *Reeves, supra; Great Northern Insurance Co.* v. *Read, supra.* We are of the opinion, therefore, that the present proceeding was brought in reliance on § 64–2614 (a) and is a suit against the state.

It remains to be considered whether the State of Indiana has consented to this action against it in the federal court.

The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This express constitutional limitation denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent. *Hans* v. *Louisiana,* 134 U. S. 1, 10; *Ex parte New York,* 256 U. S. 490, 497; *Missouri* v. *Fiske,* 290 U. S. 18, 25; *United States* v. *U. S. Fidelity & Guaranty Co.,* 309 U. S. 506, 512; *Great Northern Insurance Co.* v. *Read, supra; State* v. *Mutual Life Ins. Co.,* 175 Ind. 59, 71, 93 N. E. 213; *Hogston*

v. *Bell,* 185 Ind. 536, 548, 112 N. E. 883. While the state's immunity from suit may be waived, *Clark* v. *Barnard,* 108 U. S. 436, 447; *Gunter* v. *Atlantic Coast Line,* 200 U. S. 273; *Missouri* v. *Fiske,* 290 U. S. 18, 24, there is nothing to indicate authorization of such waiver by Indiana in the present proceeding.

Section 64–2614 (a) authorizes "action or suit against the department in any court of competent jurisdiction; and the circuit or superior court of the county in which the taxpayer resides or is located shall have original jurisdiction of action to recover any amount improperly collected." In the *Read* case we construed a similar provision of an Oklahoma tax refund statute as a waiver of state immunity from suit in state courts only. 322 U. S. 47, 54. As was said in that case: "When a state authorizes a suit against itself to do justice to taxpayers who deem themselves injured by any exaction, it is not consonant with our dual system for the federal courts to be astute to read the consent to embrace federal as well as state courts. . . . when we are dealing with the sovereign exemption from judicial interference in the vital field of financial administration a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found." Cf. *United States* v. *Shaw,* 309 U. S. 495, 501. Section 64–2614 does not contain any clear indication that the state intended to consent to suit in federal courts.[8] The provision in

---

[8] Section 60–310, Burns, Indiana Stat. Ann. (1943 Replacement), (Acts, 1941, ch. 27, § 1, p. 64), provides for the creation of a state board of finance. This section reads, in part, as follows: "Such board may sue, and be sued in its name, in any action, and in any court having jurisdiction, whenever necessary to accomplish the purposes of this act."

It does not appear that the right to sue the department of treasury for erroneous tax payments, which was granted by § 64–2614 (a), Burns, Indiana Stat. Ann. (1943 Replacement) (see Acts, 1937, ch.

this section which vests original jurisdiction of suits for refund in the "circuit or superior court of the county in which the taxpayer resides or is located" indicates that the state legislature contemplated suit in the state courts.[9] Moreover, this interpretation of § 64–2614 (a) to authorize suits only in state courts accords with the state legislative policy. Indiana has adopted a liberal policy toward general contract claimants but confines their suits against the state to state courts.[10]

It remains to be considered whether the attorney general for the State of Indiana in his conduct of the present proceeding has waived the state's immunity from suit. The state attorney general is authorized to represent the state in actions brought under the Indiana refund statute.[11] He appeared in the federal District Court and the

---

117, § 14, pp. 631–32) has been repealed or transferred to the state board of finance by the Acts, 1941, ch. 27, or otherwise.

If it is held by Indiana that the state's consent to be sued for the recovery of taxes was covered by § 60–310 rather than by § 64–2614 (a), we should be of the opinion, until otherwise advised by Indiana adjudications, that the consent was limited to suits in the state courts.

Chapter 27 of the Acts of 1941, which creates the state board of finance, apparently invests the board with control over public funds rather than with the collection and refund of taxes.

[9] Reference to a particular state court in a California statute similar to § 64–2614 was held to warrant an inference that the state legislature consented to suit against the state in a state court only. See *Smith* v. *Reeves*, 178 U. S. 436, 441.

[10] Burns, Indiana Stat. Ann. § 4–1501 (1933), provides:

"Any person or persons having or claiming to have a money demand against the state of Indiana, arising, at law or in equity, out of contract, express or implied, . . . may bring suit against the state therefor in the superior court of Marion County, Indiana, . . . and jurisdiction is hereby conferred upon said superior court of Marion County, Indiana, to hear and determine such action . . ."

[11] Section 64–2614 (c) provides:

"It shall be the duty of the attorney-general to represent the department, and/or the state of Indiana, in all legal matters or litigation,

Circuit Court of Appeals and defended the suit on the merits. The objection to petitioner's suit as a violation of the Eleventh Amendment was first made and argued by Indiana in this Court. This was in time, however. The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment in this case even though urged for the first time in this Court.

It is conceded by the respondents that if it is within the power of the administrative and executive officers of Indiana to waive the state's immunity, they have done so in this proceeding. The issue thus becomes one of their power under state law to do so. As this issue has not been determined by state courts,[12] this Court must resort to the general policy of the state as expressed in its Constitution, statutes and decisions. Article 4, § 24 of the Indiana Constitution provides:

---

either criminal or civil, relating to the enforcement, construction, application and administration of this act, upon the order and under the direction of the department."

[12] *State ex rel. Woodward* v. *Smith*, 85 Ind. App. 56, 152 N. E. 836, is the only Indiana decision which has come to our attention as involving the authority of state executive or administrative officials to consent to suit against the state. In that case plaintiff sued to foreclose a mortgage on certain land and joined the State of Indiana as defendant in order to obtain cancellation of a prior judgment lien on this property in favor of the state. The defendant state filed a cross-complaint for affirmative relief seeking satisfaction of its lien. The intermediate state court held that since the state appeared, pleaded to the merits and filed a cross-complaint for affirmative relief, it thereby consented that it might be made a party to determine the priority of its lien. This case involves an application of the well-accepted principle that when a sovereign sues for affirmative relief, it is deemed to have waived its sovereign immunity as to the issues presented by its affirmative claim. *State* v. *Portsmouth Savings Bank*, 106 Ind. 435, 7 N. E. 379.

"Provision may be made, by general law, for bringing suit against the State, as to all liabilities originating after the adoption of this Constitution; but no special act authorizing such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed."

We interpret this provision as indicating a policy prohibiting state consent to suit in one particular case in the absence of a general consent to suit in all similar causes of action. Since the state legislature may waive state immunity only by general law, it is not to be presumed in the absence of clear language to the contrary, that they conferred on administrative or executive officers discretionary power to grant or withhold consent in individual cases. Nor do we think that any of the general or special powers conferred by statute on the Indiana attorney general to appear and defend actions brought against the state or its officials can be deemed to confer on that officer power to consent to suit against the state in courts when the state has not consented to be sued.[13] State court de-

---

[13] Section 4–1504, Burns, Indiana Stat. Ann. (1933) authorizes the state attorney general to represent the state in actions brought against it under § 4–1501, see note 10, *supra;* it provides:

"It shall be the duty of the attorney-general of state, in person or by deputy, to defend and represent the interests of the state in said superior court of Marion County, Indiana, and also in the Supreme Court on appeal."

Section 49–1902 provides generally:

"Such attorney-general shall prosecute and defend all suits that may be instituted by or against the state of Indiana, the prosecution and defense of which is not otherwise provided for by law, whenever he shall have been given ten (10) days' notice of the pendency thereof by the clerk of the court in which such suits are pending, and whenever required by the governor or a majority of the officers of state, in writing, to be furnished him within a reasonable time; and he shall represent the state in all criminal cases in the Supreme Court, and shall defend all suits brought against the state officers in their official relations, except suits brought against them by the state; and

cisions construe strictly the statutory powers conferred on the Indiana state attorney general and hold that he exercises only those powers "delegated" to him by statute and does not possess the powers of an attorney general at "common law." [14]  It would seem, therefore, that no properly authorized executive or administrative officer of the state has waived the state's immunity to suit in the federal courts.

*Gunter* v. *Atlantic Coast Line,* 200 U. S. 273, is not applicable to the instant case since it involved a taxpayer's ancillary suit to enjoin South Carolina tax officials from collecting taxes in violation of an earlier decision of this Court upholding the validity of a state agreement to exempt the taxpayer's property. *Humphrey* v. *Pegues,* 16 Wall. 244. The *Pegues* case involved a suit against the state in the person of its tax officials, the state attorney general appearing for the state and arguing the case on the merits, no issue of sovereign immunity being raised. In the *Gunter* proceeding, brought over twenty

---

he shall be required to attend to the interests of the state in all suits, actions or claims in which the state is or may become interested in the Supreme Court of this state."

Section 64–2614 (c) specifically authorizes him to represent the state in actions brought under the provisions of § 64–2614 (a) under which petitioner's suit is brought. See note 11, *supra.*

[14] *State ex rel. Bingham* v. *Home Brewing Co.,* 182 Ind. 75, 87–95, 105 N. E. 909; *Julian* v. *State,* 122 Ind. 68, 23 N. E. 690. Various lower federal court decisions have held that a state attorney general cannot waive state immunity from suit. *Deseret Water, Oil & Irr. Co.* v. *California,* 202 F. 498; *Title Guaranty & Surety Co.* v. *Guernsey,* 205 F. 91; *O'Connor* v. *Slaker,* 22 F. 2d 147; *Dunnuck* v. *Kansas State Highway Commission,* 21 F. Supp. 882. The United States Attorney General has been held to be without power to waive the sovereign immunity of the United States. *Stanley* v. *Schwalby,* 162 U. S. 255, 269–70; cf. *United States* v. *Shaw,* 309 U. S. 495, 501.

See *Richardson* v. *Fajardo Sugar Co.,* 241 U. S. 44, where, without consideration of any limitations on his powers, we held that the attorney general of Puerto Rico could waive its sovereign immunity.

years later, defendant South Carolina attacked the validity of the *Pegues* judgment on the ground that in that proceeding the state had not consented to be sued. This Court held the *Pegues* judgment was res judicata and binding on the state because the South Carolina statutes conferred on the state officials and the attorney general power there to "stand in judgment for the state," 200 U. S. at 285, 286–87. The state's submission to the court was authorized by statute, not by the unauthorized consent of an official. *Farish* v. *State Banking Board*, 235 U. S. 498, 512. No distinction was drawn between federal and state courts. Reliance was placed on contemporaneous administrative interpretation of the state statutes, absence of any legislative action repudiating the attorney general's conduct of the case and the failure of the state government in all its departments, for more than twenty years, to assert any right in conflict with the *Pegues* adjudication. Administrative construction by a state of its statutes of consent has influence in determining our conclusions. *Great Northern Insurance Co.* v. *Read, supra.*

As we indicated in the *Read* case, the construction given the Indiana statute leaves open the road to review in this Court on constitutional grounds after the issues have been passed upon by state courts. The advantage of having state courts pass initially upon questions which involve the state's liability for tax refunds is illustrated by the instant case where petitioner sued in a federal court for a refund only to urge on certiorari that the federal court erred in its interpretation of the state law applicable to the questions raised.

The judgment of the Circuit Court of Appeals is vacated and the cause is remanded to the District Court with directions to dismiss the complaint for want of consent by the state to this suit.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.