Thomas G. CLIBORNE, etc.

v.

The DEPARTMENT OF STATE POLICE, etc. et al.

Civ. A. No. 79–0529–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Jan. 22, 1980.

Sa'ad El'Amin, Richmond, Va., for plaintiff.

A. R. Woodroof, John M. McCarthy, Asst. Attys. Gen. of Va., John M. Oakey, Jr., McGuire, Woods & Battle, Richmond, Va., for defendants.

**MEMORANDUM**

WARRINER, District Judge.

**I**

Plaintiff Thomas G. Cliborne was the owner and operator of B & J Citgo Service Station in the Town of South Hill, Virginia. The defendant Department of State Police is an agency of the Commonwealth of Virginia with statutory authority to compel all motor vehicles in the Commonwealth to submit to inspection and, through its Superintendent, to "designate, furnish instructions to and supervise official inspection stations for the inspection of motor vehicles . . . ." Va.Code § 46.1–318 (Repl.1974). The purpose of inspection is to assure that the mechanism and equipment of motor vehicles are safe for operation on the public highways. Va.Code § 46.1–315(a) (Repl. 1974). By statute the Department of State Police also is empowered to suspend or revoke the designation of service stations or garages as official inspection stations. Va. Code §§ 46.1–318, 324 (Repl.1974).[1]

In September 1975 plaintiff Cliborne applied to the defendant Department for designation of B & J Citgo as an official inspection station. The application was approved. On 31 October 1977, however, plaintiff's authority to inspect and approve automobiles on behalf of the State was "suspended indefinitely." Captain R. M. Terry, Safety Officer of the State Police, stated in a letter to the plaintiff that the suspension was "necessary due to your failure to comply with the inspection rules and regulations as set forth in the Official Inspection Manual."

---

1. Section 46.1–318 provides in part:

   [T]he Superintendent may at any time, after five days' notice, revoke the designation or appointment of any official inspection station designated or appointed by him.

   Section 46.1–324 provides:

   Any person violating this [A]rticle [10] shall be punished by a fine of not less than $25 nor more than $500 for the first offense and not less than $100 nor more than $1000 for each subsequent offense except as herein otherwise provided. If the violation of this article or regulations of the Superintendent made pursuant thereto is by an official inspection station in addition to or in lieu of such fine imposed by a court the Superintendent may, whether or not the violation is a first offense against this article, or regulation of the Superintendent, suspend the appointment of the inspection station or, if in his opinion after hearing, the facts warrant such action the Superintendent may revoke the authority and cancel the appointment of such inspection station.

   Neither these statutes, nor the other statutes in Article 10, which is captioned *Inspection and Inspection Stations*, has been construed in a reported decision by a Virginia court.

Plaintiff retained counsel and correspondence ensued which culminated in a meeting between plaintiff and his counsel, on the one hand, and a Lieutenant Riner of the Virginia State Police, on the other. Though this meeting was not characterized by counsel as a "hearing," it is clear from plaintiff's Exhibit 2, a written report of the meeting filed by Lieutenant Riner, that the parties had an extensive discussion and that the principal reason for the suspension, five pending felony charges against plaintiff and his wife involving possession of 4.8 pounds of marijuana, was specifically discussed.[2] In addition allegations of "certain irregularities in plaintiff's inspection practices" were brought out. Plaintiff subsequently pled guilty to a misdemeanor possession of marijuana charge.

█ Plaintiff brings suit in this Court alleging that the defendants,[3] under color of State law, revoked plaintiff's designation as an official inspector in violation of the due process clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983. Plaintiff claims that he has lost substantial business profits as a result of the defendants' revocation.[4] Plaintiff seeks a declaratory judgment that the defendants deprived plaintiff of due process in contravention of the Fourteenth Amendment, a preliminary and permanent injunction requiring the defendant to designate B & J Citgo as an official inspection station and plaintiff as an official inspector, and damages of $150,000.[5] The matter is before the Court on cross motions for summary judgment.

█ The determination of whether one has a "property right" in the designation of his service station as an "official inspection station" turns on whether he has "a legitimate claim of entitlement" to the designation. One has such a claim of entitlement when he cannot be deprived of the designation absent a finding of due cause. *See e. g., Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). The Court must examine the Virginia scheme of designation and of revocation and suspension to determine the legitimacy of plaintiff's claim of entitlement.

It cannot be gainsaid that Va.Code § 46.1–318[6] provides for summary revocation and, derivatively suspension, without cause or hearing and with only the briefest of notice. This statutory provision reduces any argument regarding entitlement to *de minimis*. And if this were all that appears

---

**2.** In a letter from plaintiff's counsel to the Department following the meeting with Lieutenant Riner, the discussion was characterized as "most informative and fair" and the reasons given for the suspension, as disclosed by Lieutenant Riner, were set forth as:

"(1.) The pending criminal charges against him.
"(2.) Accusations made by a single individual in South Hill."

Later, when plaintiff applied for reinstatement, the stigma resulting from the criminal charges were cited as a reason for refusal. Defendants' Exhibit 6–C, letter of 27 March 1978, Lieutenant Riner to Captain Wilson.

**3.** On 30 November 1979 a pleading was filed that purported to stipulate the dismissal of Captain R. M. Terry as a party defendant in this law suit. Fed.R.Civ.P. 41(a)(1)(ii) requires that a voluntary stipulation of dismissal be signed by all parties. The pleading purporting to dismiss Captain Terry was not signed by counsel for Captain Terry, and thus was ineffective as a voluntary dismissal. The Court considers Captain Terry a party to this litigation.

**4.** Plaintiff's service station closed shortly before the commencement of this law suit. Because plaintiff, whose trade is automotive mechanic, still seeks reinstatement of his status as an official inspector, his claim is not moot.

**5.** Insofar as plaintiff seeks money damages from the Commonwealth of Virginia for the alleged malfeasance of its agent the Department of State Police, this suit is barred by the Eleventh Amendment. *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). In suits against one of the several States a federal court's remedial power generally is limited to declaratory or prospective injunctive relief. *See e. g., Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

**6.** See n. 1.

in the regulatory scheme this opinion should end here with a finding for defendants.

The Virginia General Assembly went further, however, and in a confusing jumble of language enacted § 46.1–324.[7] This section apparently makes a violation of any part of the inspection statutes, Article 10 of Chapter 4 of Title 46.1 of the Code, a misdemeanor punishable in a court by a fine. It provides further that if the violation "of this article or regulations . . . made pursuant thereto is by an official inspection station," the Superintendent may, "in addition to or in lieu of such fine" suspend the designation or "after hearing" revoke the designation.

Though the language of the statute implies that one may be penally fined for violation of a regulation, that eventuality is unlikely to be a result of a trial in court.[8] Further, since it is presumed that one may not be fined by a court absent proof beyond a reasonable doubt, the content and purport of the additional "hearing" by the Superintendent is not readily apparent. Finally, given the Superintendent's summary authority to revoke designations in § 318, the purpose of the hesitant and double-tiered approach of the General Assembly in enacting § 324 is obscure.

Fortunately for this Court, the convolutions of § 324 need not be fully explored for purposes of this decision. Although it provides for a court trial and for an additional hearing, it requires these procedures only when there is a violation by an official inspection station of Article 10 or of regulations made pursuant thereto. It must be inferred, then, that the subject violation must be one relating directly to the conduct of motor vehicle inspections by an inspection station. In such case a criminal hearing followed by a due process hearing is

required by law before the Superintendent may effect revocation.[9] Thus, if an inspection station is charged with approving a worn brake shoe, rigid due process, including proof of guilt in court beyond a reasonable doubt, is required. Such statutorily imposed process ineluctably imputes a claim of entitlement to the designee which is undeniably legitimate. Thus, inspection station designations have been infused with a property interest by act of the General Assembly.

Were this all that appeared a judgment for plaintiff would be appropriate. But, as shall be developed below, plaintiff was entitled to no process in this case and thus no claim of entitlement exists.

Hereinabove we mentioned the brake shoe case and the procedures attendant thereto before revocation could ensue. Brake shoes, tires, headlights, and the like are part and parcel of the "mechanism and equipment" mentioned in § 46.1–315. They are the things with which Article 10 and regulations made pursuant thereto may be properly concerned. Marijuana, on the other hand, is not mentioned in Article 10 nor is it a proper subject of a regulation made pursuant to Article 10. Thus a charge or conviction of a drug offense is not encompassed within the strictures of § 324. None of the procedural safeguards of § 324 are called into play when one is charged with a violation of statutes enacted to curb illegal drug trade. Only violations of Article 10 and regulations made pursuant to Article 10 are implicated in due process hearings under the Virginia scheme.

While such a classification of offenses may not be readily perceived as rational, a rational argument may nevertheless be made. In the area of inspections, pass/fail is primarily a matter of degree. One me-

---

7. See n. 1.

8. It is argued that Section 46.1–324 may fairly be read as not requiring a criminal conviction in every case prior to termination. Defendants say it may be construed to mean that if a violation is committed by an "official inspection station" then "in lieu" of a court conviction and fine, the Superintendent may "suspend the appointment" or "after hearing" revoke the

designation of a licensee. It is urged by defendants that this reading is consonant with the practice of the Superintendent for over three decades. The etiology of the Superintendent's practices, however, have not been disclosed with any degree of clarity to this Court.

9. See n. 8 for a different interpretation of § 324.

chanic may believe a brake shoe is sound while another may apprehend substantial danger. A trial and hearing might reasonably be required to resolve the questions of degree between the extremes. Further, in matters dealing with motor vehicles, the daily bread of an auto mechanic, his reputation *in his trade* is at stake and it may be that this influenced the General Assembly to require proof beyond a reasonable doubt before a designation be revoked. Indeed, there may be other similar concerns, but when one leaves the area of auto inspection these concerns to the designee no longer obtain and the paramount concern becomes the integrity of and confidence in the Virginia Department of Police in its obligation to protect motorists on the highways.

It is apparent that a reputation for integrity and propriety, which it is imperative that the State Police enjoy, was central to the decision to suspend. The State Police must be above reproach insofar as possible and to that end prompt and decisive action when a designee appears to stray from lawabiding and honest practices is essential. Good reputation, character, and attitude are appropriate requirements for police officers. They are also appropriate for those associated with them in carrying out their obligation to ensure safe highway travel. Even one without fault who, nevertheless, has a general reputation for being dishonest or of having bad character would be an inappropriate person to carry out police inspection services. Thus, when the Superintendent learned that plaintiff was charged with involvement with illegal drugs it was his duty to suspend plaintiff as an inspection designee. To have delayed or deferred would have elevated plaintiff's "right" to be an inspector over the clear necessity that the State Police maintain their integrity and their reputation therefor.

Since involvement with drugs, a curse on the citizenry, affords grounds for, at the least, suspension, plaintiff's admission by his guilty plea that he was so involved obviates any need for a due process hearing even if one were otherwise required by the Constitution. *See Clark v. Whiting*, 607 F.2d 634 (4th Cir. 1979); *McNeill v. Butz*, 480 F.2d 314 (4th Cir. 1973).

 It follows from the foregoing that Virginia has not clothed an automobile inspection designee with such a claim of entitlement as creates a property right in that designation when the designee engages in activity, *aliunde* the operation of the inspection station, which impugns the integrity and propriety of the Virginia State Police. Summary revocations or suspensions are permitted in such circumstances. No legitimate claim of entitlement arises.

An appropriate order shall issue.