QUACKENBUSH, District Judge.
FACTS
Prior to the filing of its petition in bankruptcy, Visiting Home Services, Inc. (VHS), a California corporation, was engaged in the business of providing services to needy persons pursuant to contracts with state and local agencies.
In 1974, VHS entered into a Security Agreement with the Sanwa Bank of California (Bank), by which the bank was given a security interest in all accounts, contract rights, and rights of payment then or thereafter arising from the business of VHS. In 1976, appellant Utah State Department of Social Services (Social Services Department) contracted with VHS for provision of services to needy persons in Utah. On August 31, 1976, VHS filed a petition under Chapter XI of the Bankruptcy Act in the United States District Court for the Northern District of California. On September 3, 1976, VHS was adjudged bankrupt. At some point after the filing of the petition, appellant Industrial Commission of Utah (Utah Commission) obtained assignments of wage claims of some, but not all, Utah resident employees of VHS, as the statutory collection agent. Wage claims of residents of other states were a part of the bankruptcy proceedings.
By written agreement dated September 10,1976, between the Bank and the appellee (Trustee), approved by the Bankruptcy Court, the Trustee agreed to collect all accounts of the bankrupt VHS and deposit them into the Bank. By letter dated September 10, 1976, the Trustee and the Bank directed the Department to make all payments of amounts due to the Bank. On October 8, 1967, the Utah Commission entered an order entitled Wage Claim Awards against VHS, which order was filed in the Judgment Docket of the Salt Lake County District Court, Utah, on October 18, 1976. On November 5, 1976, and December 8, 1976, writs of garnishment based upon the Commission’s assigned wage claims were served upon the Social Services Department, ordering the Department not to pay any money to VHS. At that time, the Social Services Department was admittedly indebted to VHS in the amount of $103,-003.97.
On May 10, 1977, the Trustee filed a claim against the Social Services Department for $105,910.77, approximately the same amount as was the subject of the garnishment proceedings ($103,003.97). On August 1, 1977, in the Utah State Court, a Garnishee Judgment was rendered “for the bankrupt for the benefit of the garnishor Commission” against the Social Services Department in the amount of $103,003.97.
The present adversary proceeding commenced on October 31,1977 in the Northern District of California. The bankruptcy judge granted the Trustee’s motion for summary judgment and entered an order enjoining the enforcement of the garnishee judgment and compelling the turnover of the $103,908.26 to the Trustee. The district court affirmed.
DISCUSSION
Section 403(a) of Public Law 95-598, 32 Stat. 2683, Bankruptcy Reform Act of 1978, provides that prior law and procedures apply to all cases initiated before *1359 October 1, 1979, which was the new act’s effective date. Therefore, it is clear that the Bankruptcy Act and the Bankruptcy Rules existing prior to October 1,1979, govern these proceedings. Findings of fact entered by . a Referee in Bankruptcy or a District Court Judge are subject to the “clearly erroneous” standard of review. Conclusions of law, however, must be overturned if “erroneous”. Utley v. United States, 304 F.2d 746, 749-50 (9th Cir. 1962).
I.
The first issue is whether the Bankruptcy Court had summary jurisdiction to dispose of the funds garnished by the State of Utah after the bankruptcy filing. A bankruptcy court has summary jurisdiction to proceed on the merits (1) if there is actual or implied consent; (2) if it had actual or constructive possession of the property in question at the time of the filing of the petition in bankruptcy; (3) if the adverse claim is only “colorable”; or (4) if summary jurisdiction has been conferred by the Bankruptcy Act. If the court does not have jurisdiction, it must dismiss the proceeding leaving the trustee to his plenary proceeding remedy. Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 76 L.Ed. 897 (1926); May v. Henderson, 268 U.S. 106, 45 S.Ct. 456, 69 L.Ed. 870 (1924).
The second and third of the four criteria are at issue in this appeal. That is to say, this court must determine whether the valid security interest given by VHS to the Bank deprived the Bankruptcy Court of constructive possession of the excess value of all accounts receivable, which accounts include the debt owed VHS by the State. The other aspect of the possession question, and hence, the summary jurisdiction issue, is whether the state’s claim was so substantial, as distinguished from merely colorable, as to deprive the bankruptcy court of possession.
Appellants argue that the accounts receivable were not in the possession of the bankrupt on the date of filing as the accounts had been assigned to the Bank with notice to the Department. This “notice” consisted of a letter dated August 30, 1976, from VHS to the Utah Division of Family Services as follows:
Please be advised that as of this date, all correspondence to Visiting Home Services, Inc., including any and all payments made by you in our favor, is to be addressed as follows:
Visiting Home Services, Inc.
c/o The Sanwa Bank of California
300 Montgomery Street
San Francisco, CA 94104
Attention: Mr. Ichiro Matsumoto
Please note this change of address on your records.
The Bankruptcy Judge found that this letter was a change of address for payment but that the letter did not indicate a change of payee. The Bankruptcy Judge further found that the Bank’s position was that of an assignee for security purposes. This finding was based on the facts that the Bank’s claim was a great deal less than the total accounts receivable assigned, the bank was paid in full, substantial funds had been received from the surplus, and accounts receivable remained to be collected by the trustee for the benefit of creditors. An assignment to a third party for security purposes does not necessarily deprive the Bankruptcy Court of constructive possession. In re United General Wood Products, 483 F.2d 975, 976 (9th Cir. 1973). It is only “where there has been an outright and complete assignment of the chose in action to a third party prior to bankruptcy, as distinguished from a mere encumbrance of it, that a summary proceeding will not lie, and a plenary suit is the proper remedy”. 2 Collier on Bankruptcy 123.05, at 489-90 (14th ed. 1976). The record supports the Bankruptcy Judge’s finding that the Bank had a mere encumbrance, rather than a complete assignment of the chose in action.
Having decided that the debtor’s possession was not disturbed by the security *1360 interest, we turn to the substantiality of the state’s claim. We held recently in Grover v. Palmer, 625 F.2d 321, 323 (9th Cir. 1980) that the bankruptcy court has constructive possession of property where the third party in possession (here the Social Services Department) “does not assert a substantial, bona fide adverse claim to the property, but one that is merely ‘colorable’.” Even if a third party’s claim was “adverse”, a state court judgment awarding the property to the bankrupt makes the third party claim “insubstantial”. Id. Moreover, it is the time the bankruptcy petition is filed that determines which party has possession. Where adverse claimants have neither title to nor possession of the property at the time the petition is filed, the claim must be regarded, at most, as merely colorable. Since the Utah Commission was not an assignee of the private wage claims at the time of the filing of VHS’ petition in bankruptcy, it was not then in “possession” of the claims. It therefore had no adverse claim that could defeat the summary jurisdiction of the bankruptcy court. Grover v. Palmer, supra at 324.
The Social Services Department is a third party in possession of the proceeds of the bankrupt’s contract rights. Thus, the issue becomes the substantiality of the Department’s claim. It is not disputed that its debt to the bankrupt was unconditionally due and owing at the time of VHS’ petition in bankruptcy. It raised no defense to the subsequent garnishee judgment finding it indebted to the bankrupt. Accordingly, the Social Services Department’s claim was not on its own behalf but on behalf of the Utah Commission as assignee, which assignment had not occurred at the time of VHS’ bankruptcy petition. Thus, the Social Services Department, as a mere custodian, supported its fellow Utah agency’s (Commission’s) position.
The Bankruptcy Judge made the factual finding that the Commission held only some of the Utah wage claims, and there were other wage claimants in Utah and from other states as well. The purpose of the bankruptcy law is to establish a uniform system to place the property of the bankrupt, wherever it is, under the control of the court for equal distribution among creditors. Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060 (1930). Not only would the appellants’ theory result in unequal distribution among wage claimants of the various states, but also among wage claimants within the State of Utah. Preferential treatment of one state’s resident creditors over another state’s is impermissible under the Bankruptcy Act. In re C. D. Hauger Co., 54 F.2d 117, 118 (N.D.Tex. 1931). Therefore, enforcement of the Commission’s claims against the Service’s funds would be contrary to the purposes of the Bankruptcy Act.
Appellants argue that they have a right to set off certain employees’ claims against the debt owing by the State. However, the appellants’ entitlement to set off fails for the reason that mutuality is lacking. Mutuality requires that the debts and credits must be in the same right, between the same individual, and in the same capacities. 11 U.S.C. § 108; see, Collier on Bankruptcy If 68.04[2.1] at 860 (14th ed. 1976).
It is also necessary to determine whether the Eleventh Amendment removes the state from the jurisdiction of federal (bankruptcy) court so as to permit wage claimants, through assignment to a state collection agent, to garnish a debt of the state to a corporation after the corporation’s bankruptcy filing. Characterization of a suit as against the state for Eleventh Amendment purposes turns upon “the essential nature and effect of the proceeding.” Ford Motor Company v. Department of Treasury of the State of Indiana, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Where “the state is the real, substantial party in interest,” the Eleventh Amendment applies. Id. We hold that the state was not the “real, substantial party in interest.”
*1361 Although the new act may not be used to decide cases initiated under the old law, the legislative history of the Bankruptcy Reform Act of 1978 is, nevertheless, instructive on the law of state immunity in bankruptcy court:
... Congress has the power to waive sovereign immunity for the Federal government completely in bankruptcy cases, .... Congress does not, however, have the power to waive sovereign immunity completely with respect to claims of a bankrupt estate against a State, though it may exercise its bankruptcy power through the supremacy clause to prevent or prohibit state action that is contrary to bankruptcy policy.
(Emphasis added). S.Rep.No.95-989, 95th Cong., 2d Sess., reprinted in [1978] U.S.Code Cong. & Ad.News 5787, 5815. See generally, Fitzpatrick v. Bitzer, 421 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).
As discussed above, the Utah State action would thwart the well established equal distribution purpose of the bankruptcy laws. The State was not involved with the wage claims at the inception of the action and was thus not within the original alignment of the interested parties. As long as the bankrupt remains the legal owner of such an intangible up to the time of the filing of the petition, that intangible comes into the constructive possession of the Bankruptcy Court so as to enable the court summarily to determine the rights of the claimants. At the time of petitioning, the Utah private party claimants were the parties in interest; there was no right of set off in appellants; and the Bank did not own the accounts receivable. Moreover, the contract between the State and the debtor was no longer executory. The debtor had fully performed. The State claimed no defenses to the debt, and in fact admitted that it owed VHS the subject monies in the State garnishment proceedings. Clearly the State was merely a stakeholder and not the “real substantial party in interest”.
In Kennedy v. Powell, 366 F.2d 346, 348 (9th Cir. 1966), we held that where the State had a bankrupt’s funds in its treasury, the issue upon which the power of the bankruptcy court turned was whether the money was property of the bankrupt at the time of filing. The state there was determined to be the “mere custodian” of the debtor’s property. The test under the Bankruptcy Act for vesting of title to property in the trustee is whether the funds “might have” been seized at the time of filing. Id. Even though the Eleventh Amendment issue was not specifically addressed in Kennedy, this court would have to go to great lengths to distinguish Kennedy, in order to conclude that the Eleventh Amendment prevents the Bankruptcy Court’s turnover order in this case.
The Supreme Court has concluded that the thrust of the Bankruptcy Act is to secure for creditors everything of the Bankrupt’s in “leviable form when he files his petition. To this end the term ‘property’ has been construed most generously and an interest is not outside the court’s reach because it is novel or contingent or because enjoyment must be postponed.” Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966) as quoted in Kennedy v. Powell, 366 F.2d 346, 348 (9th Cir. 1966). In this case the Appellant state, by initiating the garnishment proceedings, has defined the property as belonging to the debtor. Accordingly, the state may not now argue under the guise of the Eleventh Amendment that it is anything more than a “mere custodian”.
Our conclusion is supported by Schmitt v. Lumbard, 470 F.Supp. 869, 874 (S.D.N.Y. 1977) (In re Universal Money Order Co.) which held that the bankruptcy court had exclusive jurisdiction of debtor’s bank account despite its seizure by a state officer. The court held that the debtor’s possession was not displaced because notice of the seizure reached the debtor after the filing of the bankruptcy petition. Appellants seek to distinguish the case on the ground that the Trustee in this case did not file its claim against Utah until after the assignment of the private wage claims to the State. However, the distinction ignores the rule that makes the pivotal date the date the bankruptcy petition is filed, and not the date that the trustee or the claimants filed their claims.
*1362 Finally, the state agencies challenge the extraterritorial service permitted by Bankruptcy Rule 704(f)(1) as “outside the proper concern of rule making authority”. The Rule, however, is clearly authorized by 28 U.S.C. § 2075. See, S.R.Rep.No.1561, 88th Cong., 2d Sess. reprinted in [1964] U.S.Code Cong. & Ad.News. 3804-3807.
CONCLUSION
The Supremacy Clause permits the Order Directing Turnover To The Trustee as well as the injunctive relief protecting the status quo until the turnover is accomplished. The Eleventh Amendment is no bar. No liens were created by the Garnishee Judgment since the garnishment proceedings occurred during the pendency of the automatic stay imposed pursuant to the Bankruptcy Rule.
The judgment of the district court is affirmed.