**Robin and Karen WARD, Plaintiffs,**

v.

**Randall HEKMAN, Probate Judge, et al, Defendants.**

**No. G80–338 CA1.**

United States District Court,
W. D. Michigan, S. D.

Sept. 15, 1980.

Benjamin H. Logan, II, Grand Rapids, Mich., for plaintiffs.

Ronald W. Carlson, Asst. Atty. Gen., Lansing, Mich., Dennis C. Kolenda, Phillip J. Nelson, Grand Rapids, Mich., for defendants.

## OPINION

### BENJAMIN F. GIBSON, District Judge.

This is an action challenging the constitutionality of an adoption decision, and claiming that the procedures generally followed by the defendants in placing children for foster care and adoption amount to a pattern and practice of racial discrimination. This opinion addresses motions by some of the defendants that the case be dismissed as to them.

Two of the defendants have moved to dismiss the action as against them for "failure to state a claim upon which relief can be granted," pursuant to Fed.R.Civ.P. 12(b)(6). The Court's inquiry at this point, before the reception of any evidence, is merely whether the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief. In making this determination the allegations in the complaint are taken at "face value," *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176 (6th Cir. 1975). For the purpose of these motions the parties agree as to the following fact summary:

On December 16, 1979, John and Ruth Stelpstra filed a petition with the Kent County Probate Court to adopt a young girl. The next day, December 17, 1979, Karen and Robin Ward filed a petition to adopt the same child. An evidentiary hearing was held on both petitions before Probate Judge Randall Hekman, and, on January 31, 1980, Judge Hekman granted the Stelpstra petition and denied the Ward petition, having determined that it would be in the best interest of the child to be placed with the Stelpstras.

The Wards subsequently filed this suit against Judge Hekman claiming he "abused his judicial discretion" by placing the child with the Stelpstras contrary to the recommendation of experts who testified at the hearing on the factor of race in the adjustment of a child. The child involved is bi-racial, the Stelpstras are white, and the Wards are black. The Wards claim that Judge Hekman discriminated against them on the basis of race.

Also named as defendants are Bethany Christian Services (hereinafter "Bethany") and the Kent County Department of Social Services, being Michigan Department of Social Services (hereinafter "MDSS"). Bethany is the adoption agency which handled the original placement of the child involved in this case, and MDSS is the state agency responsible for supervising adoption agencies and foster placement. Plaintiffs complain that both discriminated against them on the basis of race. In particular, they

allege that Bethany did not try hard enough to locate a black family with whom to place the child, that, contrary to Michigan law, MDSS did not sufficiently consider the "religious, racial and cultural background" of the child when it approved of her placement with the Stelpstras, and that both Bethany and MDSS have a policy of placing black children with white families for foster care.

Plaintiffs ask this Court to declare the acts of the several defendants to be racially discriminatory, to order Judge Hekman to place the child with them, to order Bethany to cease its discriminatory practices and to actively recruit black families as foster parents, and to award damages of $200,000.

Judge Hekman has filed a Motion to Dismiss those of plaintiffs' claims that pertain to him and to the order issued by him. MDSS has also filed a Motion to Dismiss those claims pending against it.

Judge Hekman's Motion to Dismiss asserts the following grounds:

First, that he is immune from liability for damages for actions performed by him in his capacity as a judge.

Second, that this Court is prohibited by the principle of equitable restraint from considering plaintiffs' demand that the state adoption order be set aside, inasmuch as there is currently pending a state action involving the same order.

Third, that this Court should abstain because this action involves competing claims to the custody of a child.

Fourth, that consideration of plaintiffs' claims regarding the validity of the adoption order is barred by the principle of *res judicata.*

Fifth, that this case is, in reality, a habeas corpus petition, and plaintiffs have not exhausted all state remedies available to them.

Sixth, that plaintiffs' federal claims pertaining to the validity of the adoption order are not sufficiently substantial for this Court to exercise its pendent jurisdiction to resolve their claim that that order also violates state law.

MDSS's Motion to Dismiss asserts as its first ground that it is immune from suit by virtue of the Eleventh Amendment. It then adopts defendant Hekman's second through sixth grounds as its own.

■ As to each defendant if the motion is granted for the first reason, the claim for damages will be dismissed. If any of the next four grounds are accepted by this Court, the result will be a dismissal of this action insofar as it seeks to overturn the adoption order entered by Judge Hekman. The case against defendant Bethany, however, will not be dismissed. The action may proceed against this defendant because plaintiffs have alleged that it has engaged, and continues to engage, in a pattern of discriminatory conduct.

■ No extended discussion is required to dispose of Judge Hekman's first ground for dismissal–that he is absolutely immune from liability for damages for his actions as a judge–as the law is clear. In *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), the Supreme Court once more held that "a judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors," *id.* at 359, 98 S.Ct. at 1106. The fact that Judge Hekman's court is one of limited rather than general jurisdiction is not significant, at least where, as here, he was acting well within the limits of his jurisdiction under the Michigan Adoption Code, M.C.L.A. § 710.21 *et seq. See, e. g., Butz v. Economou,* 438 U.S. 478, 511–12, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978); *Turner v. Raynes,* 611 F.2d 92 (5th Cir. 1980); *Kenney v. Fox,* 232 F.2d 288 (6th Cir.) *cert. denied,* 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956).

Defendant MDSS argues that the Court lacks jurisdiction to hear plaintiffs' claims against it because the Eleventh Amendment is a bar. The Eleventh Amendment reads as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or pros-

ecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S.Const., amend. XI.

■ By its terms the Eleventh Amendment bars any action in law or in equity against one of the States by the citizens of another State, or citizens of another country. *Missouri v. Fiske*, 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145 (1933). The amendment has been extended through interpretation, however, to confer immunity in actions by the defendant state's own citizens as well. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Supreme Court has frequently said that suits for retrospective monetary relief are barred by the amendment, *e.g., Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), although the amendment has been held not to bar a suit for prospective relief against state officials, *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

In *Missouri v. Fiske*, 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145 (1933), the Supreme Court held that the Eleventh Amendment was a bar to a suit in federal court seeking injunctive relief against the State of Missouri to restrain the state from prosecuting certain proceedings in the Probate Court in St. Louis. The Court distinguished those cases holding that suit may be brought against state officials to restrain an attempt to enforce an unconstitutional enactment by emphasizing that the case at hand was directly against the State of Missouri. Thus, if plaintiff had named the appropriate state officials the claims for injunctive relief would not have been barred. *See Ex Parte Young*, 209 U.S. 1231, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

■ Damages, or other retrospective monetary relief, are not recoverable against a state in federal court under 42 U.S.C. § 1983 absent abrogation of the state's immunity either by the consent of the state to suit or by specific congressional authorization to sue the States. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59· L.Ed.2d 358

(1979); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Employees of Department of Public Health and Welfare, Missouri v. Department of Public Health and Welfare, Missouri*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Parden v. Terminal Railway of Alabama State Docks Department*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Fitts v. McGhee*, 172 U.S. 516, 524, 19 S.Ct. 269, 272, 43 L.Ed. 535 (1899); *Martin v. University of Louisville*, 541 F.2d 1171 (6th Cir. 1976); *Soni v. Board of Trustees of University of Tennessee*, 513 F.2d 347 (6th Cir. 1975) *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 277 (1976).

■ In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court held that in ratifying the Fourteenth Amendment the states relinquished their Eleventh Amendment immunity to the extent that section 5 of the Fourteenth Amendment grants to the Congress the "power to enforce, by appropriate legislation, the provisions of this article." Thus where Congress is found to have expressly abrogated the states' Eleventh Amendment immunity there is no bar to retrospective relief. Such an express abrogation, although found for actions under Title VII, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), was found wanting in the legislative history of section 1983, *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Plaintiffs' action against MDSS, therefore, must be dismissed as barred by the Eleventh Amendment. Had plaintiffs named appropriate state officials, or should they wish to amend their complaint to add those officials as defendants, their claims for prospective relief could survive an Eleventh Amendment immunity challenge.

The defendants also have argued that principles of federalism and comity bar this Court from considering this case at this time, at least insofar as Judge Hekman's order is concerned. The doctrine of abstention articulated by the Supreme Court in

*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), it is argued, prevents this Court from acting to reverse Judge Hekman's decision and change the custody of the young child involved, or to declare defendants' actions unconstitutional, because the proceedings in state court are still pending. While the *Younger* decision was restricted to pending criminal proceedings, this limitation has since been obliterated. *E. g., Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

*Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), involved a question of child custody involving alleged child abuse. When the parents were unable to convince the juvenile court judge to vacate his *ex parte* temporary order giving custody to the Texas Department of Human Resources, they went to federal court. In reversing the District Court's decision to hear the case the Supreme Court reasoned:

Appellants argue that the Federal District Court should have abstained in this case under the principles of *Younger v. Harris, supra*. The *Younger* doctrine, which counsels federal court abstention when there is a pending state proceeding, reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff. *Samuels v. Mackell*, 401 U.S. 66, 69, 91 S.Ct. 764, 766, 27 L.Ed.2d 688 (1971). That policy was first articulated with reference to state criminal proceedings, but as we recognized in *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the basic concern—that threat to our federal system posed by displacement of state courts by those of the National Government—is also fully applicable to civil proceedings in which important state interests are involved. As was the case in *Huffman*, the State here was a party to the state proceedings, and the temporary removal of a child in a child abuse context is, like the public nuisance statute involved in *Huffman*, "in

aid of and closely related to criminal statutes." *Id.*, at 604, 95 S.Ct. at 1208. The existence of these conditions, or the presence of such other vital concerns as enforcement of contempt proceedings, *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), or the vindication of "important state policies such as safeguarding the fiscal integrity of [public assistance] programs," *Trainor v. Hernandez*, 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977), determines the applicability of *Younger–Huffman* principles as a bar to the institution of a later federal action.

*Id.* at 423, 99 S.Ct. at 2377.

It is also clear that although Judge Hekman's order is final, the availability of appeal amounts to a pending state court proceeding for *Younger* purposes. In *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the *Younger* doctrine was applied where the appellee challenged an unappealed permanent injunction issued in a state court. The decision was explained by the Court as follows:

we believe that a necessary concomitant of *Younger* is that a party in appellee's posture must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions specified in *Younger*.

Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial. Intervention at the later stage is if anything more highly duplicative, since an entire trial has already taken place, and it is also a direct aspersion on the capabilities and good faith of state appellate courts. Nor, in these state–initiated nuisance proceedings, is federal intervention at the appellate stage any the less a disruption of the State's efforts to protect interests which it deems important. . . .

Federal post–trial intervention, in a fashion designed to annul the results of a

state trial, also deprives the States of a function which quite legitimately is left to them, that of overseeing trial court dispositions of constitutional issues which arise in civil litigation over which they have jurisdiction. We think this consideration to be of some importance because it is typically a judicial system's appellate courts which are by their nature a litigant's most appropriate forum for the resolution of constitutional contentions. ... In short, we do not believe that a State's judicial system would be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts. We therefore hold that *Younger* standards must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not exhausted his state appellate remedies.

*Id.* at 608–09, 95 S.Ct. at 1210–11.

Indeed *Younger* has been invoked by the Sixth Circuit in a case involving procedures and remedies provided under the Michigan Adoption Code, the same statute involved in the instant case. In *Huynh Thi Anh v. Levi*, 586 F.2d 625 (6th Cir. 1978), the Sixth Circuit found those procedures to be "fair and adequate," and abstained pending exhaustion of those state remedies.

The action, therefore, must be dismissed as against Judge Hekman, as against MDSS, and to the extent that it seeks to overturn Judge Hekman's order and affect a change in the custody of the child. By its decision today the Court does not in any way intend to imply that the Wards would not make good parents of this or any other child. From the record and the Court's own observations during the hearing, the Court has no reason to doubt that the Wards would provide a fine home for adoption. Judge Hekman's opinion also reflects a similar view. That, however, is not the issue in this case. The questions addressed today relate only to the Court's authority to decide the merits. Because the Court lacks such authority as to the claims discussed above at this stage in the litigation they

must be dismissed. The claims against Bethany remain. Plaintiffs are free to amend their complaint to add state officials as parties defendant as appropriate.