**MICHIGAN STATE EMPLOYEES ASSO-CIATION, a non-profit Michigan corporation; and Sheila Strunk and Shirley Kindt, on behalf of themselves and all other Michigan State Employees Association Members similarly situated, Plaintiffs,**

v.

**Duane MARLAN, Michigan Civil Service Employee Benefits Director, the Michigan Department of Civil Service, and the Michigan Civil Service Commission, Defendants.**

No. G83–1507 CA5.

United States District Court,
W.D. Michigan, S.D.

Nov. 28, 1984.

Fraser, Trebilcock, Davis & Foster by Michael E. Cavanaugh, Lansing, Mich., for plaintiffs.

Frank J. Kelley, Atty. Gen. by Robert S. Welliver, Lansing, Mich., for defendants.

OPINION RE MOTION TO DISMISS

HILLMAN, District Judge.

This is a class action filed on behalf of the Michigan State Employees Association (MSEA) and its members challenging the interpretation of certain Internal Revenue Code (IRC) provisions and Treasury regulations by defendants, Michigan Department of Civil Service (MDCS), Michigan Civil Service Commission (MCSC), and Duane Marlan, Michigan Civil Service Employee Benefits Director. At issue is section 105(a) of the IRC, 26 U.S.C. § 105(a), and Treasury Regulations 1.105–1(c)(2) and (c)(3). Those provisions govern income reporting to the Internal Revenue Service (IRS) by the State of Michigan, as an employer, with respect to Long Term Disability (LTD) plan benefits received by the State's employees.

Defendant MCSC maintains a LTD plan covering all Civil Service employees of the State. The LTD plan is an insured group policy purchased with combined premium contributions of the State, as employer, and the State's employees. Plaintiff class of MSEA members are state employees covered by the LTD plan.

Section 105(a) of the IRC provides, in pertinent part, that such LTD benefits received by an employee must be included in the employee's gross income and are taxable to the extent the benefits are attributable to employer contributions. F.I.C.A. withholding for the employer's portion of the LTD premium is required.

The LTD plan provides benefits to sick and disabled individuals once all their sick leave has been utilized, and hence the amount of employer and employee contributions toward the LTD premium varies depending upon the amount of sick leave the employee has accumulated, as reflected in three subplans under the policy based on accumulated sick leave. Subplan I employees are those with 184 or less hours of accumulated sick leave; subplan II employ-

ees are those with 184 to 528 hours of accumulated sick leave; and subplan III employees are those with more than 528 hours of accumulated sick leave. The subplans recognize that the more accumulated sick leave an employee has, the less likely it is that the plan will have to pay out benefits to the employee, and the employee's percentage contribution toward the LTD premium is accordingly reduced.

In 1979, the MCSC ordered the State to pay 50% of the cost of the LTD policy with the employee paying the remaining 50%. Where, under the subplans referenced above, the State had been paying less than 50% of the LTD premium, it was required to supplement the amounts contributed by the employees in the subplan so that the State's actual share of the contribution was brought up to 50%.

Treasury Regulation 1.105–1(c)(2) provides that where different classes of employees make different contributions to such a plan, the employer must, for IRS reporting purposes, make a separate determination for each class of employees of the portion of the amounts received under the LTD plan which is attributable to employer contributions. Treasury Regulation 1.105–1(c)(3), however, provides that if the respective contributions of the employer and its employees can't be ascertained, then the employer is permitted to calculate the employer/employee contribution determination under Treasury Regulation 1.105–1(d)(2) for all employees under the LTD plan without regard to different classes. Defendants have historically taken the view that the State's contribution toward the LTD premium cannot be "individualized," and thus treat the plan as contemplating one indivisible group and one fixed "employer contribution" of 50%. Thus, under Regulation 1.105–1(d)(2), F.I.C.A. is withheld on 50% of the LTD benefits paid to an employee and 50% of the LTD benefits are reported as taxable "other compensation" on the employee's W–2 form.

Plaintiffs argue that because subplan I, II and III employees contribute different amounts toward the LTD plan premium, they constitute different classes of employees under Regulation 1.105–1(c)(2) and the State is therefore required to make a separate determination of the amounts contributed to the LTD plan premium by the State and each class of employees. Plaintiffs contend that defendants have refused to do so in direct violation of the stated IRC section and regulation.

Plaintiffs seek declaratory and injunctive relief, specifically a judgment declaring that, for purposes of IRC § 105(a), there are different classes of MSEA member employees under the plan and its subplans, and directing defendants to make the employer-employee contribution determination required by Regulation 1.105–1(c)(2) for each such employee class under the LTD plan. Plaintiffs further seek reasonable attorney fees under 42 U.S.C. § 1983 for defendants' alleged violations of plaintiffs' rights under the IRC. Federal question jurisdiction as to Count I purportedly rests on the conflicting interpretations of the IRC and its regulations, and jurisdiction as to Count II rests on a purported violation of plaintiffs' federally secured rights under the IRC in violation of 42 U.S.C. § 1983.

The matter is now before the court on defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) for alleged lack of subject matter jurisdiction and alleged failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion to dismiss is granted.

## I.

A motion to dismiss under Rule 12(b)(1) raises the question of the court's subject matter jurisdiction, its authority or competence to hear and decide a case. When a motion is based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since, if it must dismiss the complaint for lack of subject matter jurisdiction, the other defenses and objections become moot and need not be determined. In deciding the Rule 12(b)(1) motion, which challenges the actual existence rather than the sufficiency of the alle-

gations of subject matter jurisdiction, the general rule is that a pleading's allegations of jurisdiction are taken as true unless denied or controverted by the movant. Once denied or controverted by the movant, however, the allegations of the complaint are not controlling and are merely evidence. Wright & Miller, *Federal Practice & Procedure:* Civil §§ 1350, 1363.

■ Defendants claim that this court lacks subject matter jurisdiction over both counts of plaintiffs' complaint because the Eleventh Amendment of the United States Constitution bars an action against the State, its departments, agencies and officials, absent an express waiver of sovereign immunity by the State. Although the State of Michigan has not been expressly named as a defendant, plaintiffs have sued the MDCS and the MCSC, the MCSC being a legislatively created agency of the State of Michigan, which sets policy for the MDCS.

"Because of the problems of federalism inherent in making one sovereign appear against its will in the courts of the other," the United States Supreme Court has long viewed the Eleventh Amendment as an appropriate restriction on the exercise of federal judicial power. *Employees v. Missouri Public Health & Welfare Dept.,* 411 U.S. 279, 294, 93 S.Ct. 1614, 1622, 36 L.Ed.2d 251 (1973). Current law on the interpretation and scope of the Eleventh Amendment was recently catalogued by the Supreme Court in *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), as follows:

"This Court's decisions thus establish that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.' *Employees, supra,* 411 U.S., at 280, 93 S.Ct., at 1616. There may be a question, however, whether a particular suit in fact is a suit against a State. It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.

*See, e.g., Florida Department of Health v. Florida Nursing Home Assn.,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) *(per curiam );* *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) *(per curiam ).* This jurisdictional bar applies regardless of the nature of the relief sought. *See, e.g., Missouri v. Fiske,* 290 U.S. 18, 27, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) ('Expressly applying to suits in equity as well as at law, the Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a State')."

104 S.Ct. at 908. In addition to those general principles, the Supreme Court has expressly ruled that an unconsenting state cannot be joined as a defendant to a 42 U.S.C. § 1983 action because of the state's eleventh amendment immunity. *See Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), and *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Furthermore, this court has recently held that the Michigan Public Service Commission, as an integral state agency, is entitled to the same immunity as the state itself, *ANR Pipeline Co. v. Michigan Public Service Commission,* 608 F.Supp. 43 (W.D.Mich.1984), and it follows that the MDCS, as an arm of the state, and the MCSC, as an integral state agency, are also entitled to that immunity. *See also Pennhurst, supra; Savage v. Pennsylvania,* 475 F.Supp. 524 (E.D.Pa.1979); *Ward v. Hekman,* 497 F.Supp. 454 (W.D.Mich.1980). Accordingly, plaintiffs' Count I and II claims against defendants MDCS and MCSC are dismissed on the basis that sovereign immunity leaves this court without subject matter jurisdiction as to those claims.

■ The immunity as to defendants MDCS and MCSC does not necessarily extend to defendant Duane Marlan, Michigan Civil Service Employee Benefits Director. In summarizing current law as to suit

against state officials, the *Pennhurst* court stated:

"When the suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself. Although prior decisions of this Court have not been entirely consistent on this issue, certain principles are well established. The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.' *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). See, *e.g.*, *In re Ayers*, 123 U.S. 443, 487–492, 8 S.Ct. 164, 173–176, 31 L.Ed. 216 (1887); *Louisiana v. Jumel*, 107 U.S. 711, 720–723, 727–728, 2 S.Ct. 128, 135–137, 141–142, 27 L.Ed. 448 (1882). Thus, '[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.' *Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) (*per curiam*). And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief. See *Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982).

The Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State. This was the holding in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.2d 714 (1908), in which a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment. This Court held that the Eleventh Amendment did not prohibit issuance of this injunction. The theory of the case was that an unconstitutional enactment is 'void' and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States.' *Id.*, at 160, 28 S.Ct., at

454. Since the State could not authorize the action, the officer was 'stripped of his official or representative character and [was] subjected to the consequences of his official conduct.' *Ibid.*

While the rule permitting suits alleging conduct contrary to 'the supreme authority of the United States' has survived, the theory of *Young* has not been provided an expansive interpretation. Thus, in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court emphasized that the Eleventh Amendment bars some forms of injunctive relief against state officials for violation of federal law. *Id.*, at 666–667, 94 S.Ct., at 1357–1358. In particular, *Edelman* held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. Under the theory of *Young*, such a suit would not be one against the State since the federal law allegation would strip the state officer of his official authority. Nevertheless, retroactive relief was barred by the Eleventh Amendment."

104 S.Ct. at 908–909. Plaintiffs in the case at bar seek a declaratory judgment that there are different classes of MSEA member/employees under the LTD plan for purposes of IRC § 105(a) and related regulations, as well as an injunction directing defendant Marlan to make, as to each such class of employees, a separate determination of employer/employee contributions to the plan's premium, allegedly in conformance with the requirements imposed by the IRC and its regulations. Plaintiffs emphasize that they are not seeking money damages, conceding that such money damages would not be recoverable from the State treasury. Furthermore, even if the expenditure of state funds became necessary in order to force defendant Marlan to conform his conduct to a prospective injunctive decree, "such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle an-

nounced in *Ex parte Young,*" *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974). *See also Milliken v. Bradley,* 433 U.S. 267, 288–89, 97 S.Ct. 2749, 2761, 53 L.Ed.2d 745 (1977). Accordingly, I hold that defendant Marlan is not immune from this suit under the Eleventh Amendment and defendants' motion to dismiss for lack of subject matter jurisdiction over the claims against defendant Marlan is hereby denied.

## II.

When a motion to dismiss is brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court is called upon to determine if the plaintiffs' pleadings set forth allegations sufficient to make out the elements of a right to relief. "[W]ell pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion." *Davis H. Elliot Co. v. Caribbean Utilities Co., Ltd.,* 513 F.2d 1176, 1182 (6th Cir.1975). *See also Hospital Building Co. v. Rex Hospital Trustees,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1956). However, mere conclusions will not save a complaint from dismissal. *See Blackburn v. Fisk University,* 443 F.2d 121, 125 (6th Cir.1971).

Defendants' Rule 12(b)(6) motion contends that plaintiffs have failed to state a claim under 42 U.S.C. § 1983 because (a) the State, its agency and officials are not "persons" within the meaning of that statute, and (b) plaintiffs have neither challenged the constitutionality of a state official's actions nor articulated a federally protected right. For the reasons stated below, I find that plaintiffs have failed, in Count II, to state a claim upon which relief can be granted under 42 U.S.C. § 1983. I further find that plaintiffs have failed, in Count I, to state a claim upon which relief can be granted under 26 U.S.C. § 105.

I recently ruled that the Michigan Public Service Commission is an arm of the State protected by the eleventh amendment and is not a "person" for purposes of section 1983. *ANR Pipeline Co. v. Michigan Public Service Commission, supra,* at n. 1. By analogy, neither defendant MDCS nor defendant MCSC are "persons" within the meaning of section 1983. As to defendant Marlan, there can be no serious question that he qualifies as a "person" within the meaning of section 1983, and that he may be sued under that statute if it is shown that he acted under color of state law to deprive plaintiffs of a federally protected right. *Scheuer v. Rhoades,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Plaintiffs have not challenged the constitutionality of defendant Marlan's actions but have alleged that his conduct has deprived them of rights secured by IRC § 105(a) and related regulations. Therefore, the question remains whether plaintiffs may sue defendant Marlan under 42 U.S.C. § 1983 for a purported violation of 26 U.S.C. § 105(a) and related Treasury regulations.

Despite the apparent holding of *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), that rights provided by federal law almost always may be vindicated through actions under section 1983, the following discussion from *Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers,* 453 U.S. 1, 19–20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981), clearly indicates that section 1983 does not apply to all federal statutory violations:

"The claim brought here arguably falls within the scope of *Maine v. Thiboutot* because it involves a suit by [private parties] claiming that a federal statute has been violated under color of state law, causing an injury. The Court, however, has recognized two exceptions to the application of § 1983 to statutory violations. In *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1 [101 S.Ct. 1531, 67 L.Ed.2d 694] (1981),

we remanded certain claims for a determination (i) whether Congress had foreclosed private enforcement of that statute in the enactment itself, and (ii) whether the statute at issue there was the kind that created enforceable 'rights' under § 1983. *Id.*, at 28 [101 S.Ct. at 1545]. In the present case, because we find that Congress foreclosed a § 1983 remedy under [the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act], we need not reach the second question whether these Acts created 'rights, privileges, or immunities' within the meaning of § 1983.

When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983. As Justice Stewart, who later joined the majority in *Maine v. Thiboutot*, stated in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 673, n. 2 [99 S.Ct. 1905, 1909, n. 2, 60 L.Ed.2d 508] (1979) (dissenting opinion), when 'a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983.' "

■ The court need not reach the question of whether IRC § 105(a) created "rights" within the meaning of section 1983 because the court finds that Congress, in drafting the IRC, foreclosed a section 1983 remedy under the IRC. IRC § 7422 provides a private cause of action to taxpayers to recover any internal revenue tax alleged "to have been erroneously or illegally assessed or collected, or any sum alleged to have been excessive or in any manner wrongfully collected." The right of action for refund is expressly limited to suits only against the United States, IRC § 7422(f)(1), and no such action is maintainable until a claim for refund or credit has been duly filed with the Secretary according to his regulations, IRC § 7422(a). 28 U.S.C. § 1346(a)(1) gives the United States District Courts original jurisdiction over such suits. The prevailing party in any civil proceeding brought by or against the United States in the United States District Court or the Tax Court in connection with the determination, collection or refund of any tax under Title 26 is entitled to recover reasonable litigation costs, as long as IRS administrative remedies have been exhausted prior to filing of suit. IRC § 7430. On the reasoning expressed in *Middlesex, supra*, I am satisfied that Congress did not intend to preserve a section 1983 right of action when it created such specific statutory remedies to vindicate rights provided by the IRC. I, therefore, conclude that the existence of these express remedies demonstrates that Congress intended to supplant any remedy that otherwise would be available under section 1983. *See also Sanders by Sanders v. Marquette Public Schools*, 561 F.Supp. 1361 (W.D.Mich.1983), and *Meyerson v. State of Arizona*, 507 F.Supp. 859 (D.Ariz.1981).

■ Plaintiffs have also failed to state a claim upon which relief can be granted under Count I, where they have alleged federal question jurisdiction under 28 U.S.C. § 1331 because of the questioned interpretation of IRC § 105(a). As indicated above, a taxpayer's statutory remedy under the IRC to recover any tax "erroneously or illegally assessed or collected, or any sum alleged to have been excessive or in any manner wrongfully collected" is the private cause of action provided by IRC § 7422. Such suit, however, may only be filed against the United States and only after a claim for refund has been filed administratively with the Secretary. The essence of plaintiffs' claim is that defendant Marlan's conduct has resulted in the assessment and reporting of taxable earnings from the LTD plan which were five to thirteen percent higher than in actuality for MSEA employees who collected LTD benefits under subplans I and II. In order to state a claim upon which relief could be granted, plaintiffs would have to file suit against the United States alone, and then only if they had exhausted their administrative remedies. It is instructive that the

IRC does not specifically make provision for the type of declaratory and injunctive relief sought by plaintiffs in this action. The IRC does specifically authorize at IRC §§ 7428, 7476, 7477 and 7478, respectively, declaratory judgment actions relating to status and classification of organizations under IRC § 501(c)(3), relating to qualification of certain retirement plans, relating to transfers of property from the United States, and relating to the status of certain governmental obligations.

Further, 28 U.S.C. § 2201, in the case of an actual controversy within the United States District Court's jurisdiction, creates a declaratory judgment remedy *"except with respect to Federal taxes other than actions brought under Section 7428 of the IRC."*

It, therefore, appears that plaintiffs' remedy for the purported violation of IRC § 105 is limited to a refund suit against the United States as defendant, wherein the propriety of the reporting practices at issue under section 105 could be litigated.

### CONCLUSION

Defendants' motion to dismiss plaintiffs' complaint is hereby granted, without prejudice to plaintiffs' rights to pursue appropriate remedies under the IRC.