**ENVIROTECH SANITARY SYSTEMS, INC., Plaintiff,**

v.

**Edward SHOENER; and Department of Environmental Resources, Defendants.**

**No. Civ. 90–0073.**

United States District Court, M.D. Pennsylvania.

March 14, 1990.

Brigid E. Carey, Thomas J. Foley, Jr., Scranton, Pa., Anthony J. Mazullo, Foley, McLane, Nealon, Foley & McDonald, Scranton, Pa., for plaintiff.

Kathryn L. Mershimer, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

CONABOY, Chief Judge.

## I

■ On January 12, 1990, Plaintiff filed a complaint claiming that the Defendants violated Envirotech's constitutional rights to equal protection and due process of law by inappropriately processing its application for a waste disposal permit.[1] In the form of temporary relief, the Plaintiff petitioned this Court for an injunction prohibiting the Defendants from issuing any decision upon Envirotech's initial application for a solid waste disposal permit and to otherwise maintain the present status quo existing between the parties to this matter until further order of this Court.

After giving the parties an opportunity to respond to the petition[2], this court heard oral arguments by counsel in open court on March 9, 1990. This memorandum shall address the issues raised at that hearing for injunctive relief, including whether this action should proceed in light of the eleventh amendment bar to suits against a state. We are of the opinion that it should not and, accordingly, this matter shall be dismissed.

## II

In its complaint, Plaintiff seeks to obtain equitable relief against Defendants DER and Edward Shoener for what is perceived to be a violation of Envirotech's rights to due process and equal protection under the fifth and fourteenth amendment to the federal Constitution. Envirotech also seeks compensatory and punitive damages from Edward Shoener, individually, for "subjecting Envirotech and/or causing Envirotech to be subjected to, an alleged deprivation of Envirotech's constitutional rights."

The alleged deprivation revolves around an application filed by Envirotech on December 31, 1987, to obtain a permit for the operation of a municipal waste landfill in Susquehanna County, Pennsylvania. The parties have indicated that such applications have two parts, commonly known as Phase I and Phase II. At this juncture, Envirotech's application is in the Phase I stage and, according to the affidavit of William McDonald, it is the intent of DER to deny this portion of the application. Doc. No. 3, Exhibit A.

Plaintiff contends, however, that the pending denial is a result not of the alleged deficiencies cited by the DER in their correspondence, but rather, as a result of the ultra vires acts of Defendant Shoener. In dealing with Envirotech's application, it is alleged that Shoener's actions were outside the scope of his legal authority under the Solid Waste Management Act of Pennsylvania (hereinafter "SWMA", 35 P.S.

---

**1.** No jurisdictional basis is cited by the Plaintiff in its original complaint or a subsequent amended pleading, but rather, they state as follows:

1. This action is brought pursuant to the provisions of the Civil Rights Act, as amended, R.S. § 1979; Publ.L. 96–170, § 1, December 29, 1979, 93 Stat. 1284, 42 U.S.C.A. § 1983 (the "ACT") *pursuant to the Due Process Clause and Equal Protection Provisions of the Fifth and Fourteenth Amendments of the United States Constitution.*

(emphasis added to reflect additional language of Amended Complaint) Doc. Nos. 1 and 10.

The Court notes that Section 1983 does not by itself create jurisdiction nor establish any substantive right. *Hagans v. Lavine*, 415 U.S. 528, 535, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974). (Courts at times carelessly refer to "jurisdiction under 42 U.S.C. § 1983 ...."). *Jensen v. State Board*, 763 F.2d 272, 278 (7th Cir.1985). Instead, the statute only fulfills a procedural or remedial role. Therefore, a party seeking to assert a § 1983 claim in a federal court must point to a separate jurisdiction-conferring statute such as 28 U.S.C. § 1343(a)(3) or § 1331. *See* Schwartz & Kirklin, *Section 1983 Litigation*, § 1.3 at 8 (1986).

**2.** The Plaintiff's petition for a temporary restraining order was not accompanied by a formal motion or supporting brief. *See* Local Rule 401.1 *et seq.* Rather, it was contained in the body of the Complaint. *See* FRCP 65(b). After discussions with counsel, this court found it prudent to act on the petition by issuing a Show Cause Order requiring the Defendants to respond to the request for injunctive relief.

§ 6018.101 *et seq.*). These improper actions, in turn, are alleged to have violated Envirotech's constitutional rights to due process and equal protection.

Plaintiff seeks to enjoin the Defendants from acting adversely on its application for several reasons. First, the issuance of a denial by DER of Envirotech's Phase I application would allegedly trigger Envirotech's contractual obligations to third parties, thus forcing the immediate repayment of all long-term loan obligations. This would essentially "put Envirotech out of business" and cause Envirotech's shareholders to suffer a Six Million Dollar out-of-pocket loss. Second, Envirotech seems to infer that post-denial remedies are inadequate due to a "three-year backlog" which exists at the appellate administrative board. Accordingly, Plaintiff seeks to enjoin the Defendants from acting on the permit application until this court hears Envirotech's arguments concerning the alleged constitutional deprivations.

### III

Both sides agree that a state has the inherent authority to control certain conduct to benefit and preserve the health, safety, and welfare of its citizenry. Under that authority, commonly know as a sovereign's "police power", a state may issue regulations that limit and control certain activities. If a party complies with those regulations, that party is entitled to a permit or a license to operate in the area governed by the regulations, such as a landfill in this case. The Commonwealth, of course, retains the right to determine whether or not the regulations have been complied with and also has a right to formulate a process which will be used to determine if those regulations have been fulfilled.

For instance in this case, the Commonwealth would argue that even if the court denies the issuance of a temporary restraining order and a letter of denial by the DER is issued, the Plaintiff still has the right to appeal that determination to the Environmental Quality Board which will then hold a hearing to determine whether or not the denial was arbitrary and capricious.

Plaintiff agrees in part with the Defendants' argument. Envirotech acknowledges the right of the Commonwealth to issue regulations which must be complied with before a permit will be issued. But they claim they have complied with all the regulations and indeed, were orally notified that they were in compliance by the appropriate governmental official, Mr. David Lamareaux. But in spite of such notice, another official of the Commonwealth, the Defendant, Mr. Shoener, arbitrarily and illegally denied their right to proceed and is the real author of the letter of denial which will be issued to them. They argue, then, that an official of the Commonwealth is violating the Commonwealth's own regulations and is certainly being arbitrary and capricious, at the least, in denying the Plaintiff its right to proceed beyond the first step in this landfill application process. In addition, Plaintiff argues it would be foolhardy to say that its rights are adequately protected by an appeal to the review board, because, they assert, it takes at least three years to get a hearing before that board, although the Commonwealth contests this assertion.

These arguments raise several problems for the court at this stage of the proceedings. The first is that we have a fact dispute as to the actions of the Defendant Shoener which normally is not resolved at a hearing for injunctive relief and would have to be resolved at a further hearing, if at all, by this Court. Second is a fact dispute on whether or not the time element needed to get a hearing, or to complete a hearing, before the review board, is of such importance that it would cause this Court to override concepts of comity and grant the very unusual relief of issuing a temporary restraining order, even if we were to believe that it would take an extended period of time to gain a hearing before the board.

Defendants oppose the granting of an injunction claiming that this court does not have jurisdiction over this matter. Further, the Commonwealth argues that an

examination of Plaintiff's request shows that Envirotech has failed to satisfy *any* of the four elements necessary to obtain injunctive relief[3] nor does its claims rise to the level of a constitutional deprivation.

## IV

### A. The Jurisdictional Challenge.

Plaintiff has sued for both injunctive relief and monetary damages, the latter applying only against Defendant Shoener in his individual capacity. Defendants have challenged the propriety of Plaintiff's claims against both Defendants on the basis that the eleventh amendment to the United States Constitution bars this suit.[4]

■ That amendment provides, in relevant part:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State or by Citizens or Subjects of any Foreign State. USCA, Cons. Amend. 11.[5]

■ The eleventh amendment is generally recognized as a bar to suits against a State unless specifically overridden by act of Congress[6] or unless the State has consented to be sued.[7] *Vermett v. Hough*, 606 F.Supp. 732, 742 citing *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Fizpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

As the Supreme Court explained in *Pennhurst v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984):

"The Eleventh Amendment is an explicit limitation of the judicial power of the United States." *Missouri v. Fiske*, 290 U.S., [18] at 25 [54 S.Ct. 18, 20, 78 L.Ed. 145]. [ (1933) ] It deprives a feder-

---

**3.** One who seeks an injunction is asking a federal court for "extraordinary relief, which should be granted in only limited circumstances." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir.1989) citing *Frank's GMC Truck Center, Inc. v. G.M.C.*, 847 F.2d 100, 102 (3d Cir.1988). An individual seeking injunctive relief from the federal court must demonstrate:

   1. A reasonable probability of eventual success in the litigation;
   2. A showing of irreparable injury *pendente lite* in the absence of injunctive relief;
   3. A showing of no adverse impact upon other parties interested in the proceedings; and
   4. A showing that injunctive relief would serve the public interest.
   *Alessi v. Pennsylvania Department of Public Welfare*, 893 F.2d 1444 (3d Cir.1990); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir.1989) citing *In Re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1143 (3d Cir.1982).

**4.** Plaintiff seeks a total of Eight Million Dollars from Defendant Shoener, naming him in both his official and individual capacity. Although the eleventh amendment provides immunity only to the state, a state official is also immune when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982).
   In this suit, the actions of the Defendant Shoener where taken while as regional director of DER and concerned the application process for obtaining a solid waste disposal permit. Although the actions of Shoener are alleged to be invalid under SWMA, none of his actions, right or wrong, were taken other than in his official capacity as regional administrator. Thus, we see no merit in retaining suit against this Defendant in his individual capacity. *See generally,* Schwartz & Kirklin, *Section 1983 Litigation,* § 6.5 at 126 (1986).

**5.** Though this amendment is not literally applicable to a suit against a state by its own citizens, an unconsenting state is immune from suits brought in federal courts by its own citizens, as well as by citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Employees v. Department of Public Health and Welfare of Missouri, et al.*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1983).

**6.** Although Congress had the power to abrogate the states' immunity under the fourteenth amendment, it did not do so in its enactment of 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

**7.** By statute, the Commonwealth has specifically withheld consent:

Federal courts.—Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal court guaranteed by the Eleventh Amendment to the Constitution of the United States.
42 Pa.Cons.Stat.Ann. § 8521(b).

al court of power to decide certain claims against States that otherwise would be within the scope of Art. III's grant of jurisdiction. For example, if a lawsuit against state officials under 42 U.S.C. § 1983 alleges a constitutional claim, the federal court is barred from awarding damages against the state treasury even though the claim arises under the Constitution. See *Quern v. Jordan,* 440 U.S. 332 [99 S.Ct. 1139, 59 L.Ed.2d 358] (1979). Similarly, if a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim. See *Alabama v. Pugh,* 438 U.S. 781 [98 S.Ct. 3057, 57 L.Ed.2d 1114] (1978) (per curiam). The Amendment thus is a specific constitutional bar against hearing even federal claims that otherwise would be within the jurisdiction of the federal courts.

*Pennhurst* 465 U.S. at 119, 104 S.Ct. at 918.

Thus, the principle of sovereign immunity has been declared a constitutional limitation on the federal judicial power established in Article III:

"That a State may not be sued without it consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given: not one brought by citizens of another State, or by citizens or subjects of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification."

*Pennhurst, supra,* at 98–99, 104 S.Ct. at 907, citing *Ex parte State of New York,* 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921).

Although the *Pennhurst* case involved a pendent state law claim, the Court provides us with a comprehensive historical synopsis of the development of eleventh amendment immunity. We shall, therefore, quote extensively from that opinion both for its historical guidance as well as its legal precedent.

As for the application of the eleventh amendment, the Court in *Pennhurst* stated:

There may be a question, however, whether a particular suit in fact is a suit against a State. It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. See, e.g., *Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home Assn.,* 450 U.S. 147 [101 S.Ct. 1032, 67 L.Ed.2d 132] (1981) (per curiam); *Alabama v. Pugh,* 438 U.S. 781 [98 S.Ct. 3057, 57 L.Ed.2d 1114] (1978) (per curiam). This jurisdictional bar applies regardless of the nature of the relief sought. See, e.g., *Missouri v. Fiske,* 290 U.S. 18, 27 [54 S.Ct. 18, 21, 78 L.Ed. 145] (1933) ("Expressly applying to suits in equity as well as at law, the Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a State").

When the suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself. Although prior decisions of this Court have not been entirely consistent on this issue, certain principles are well established. The Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 464 [65 S.Ct. 347, 350, 89 L.Ed. 389] (1945). See e.g., *In re Ayers,* 123 U.S. 443, 487–492 [8 S.Ct. 164, 173–176, 31 L.Ed. 216] (1887); *Louisiana v. Jumel,* 107 U.S. 711, 720–723, 727–728 [2 S.Ct. 128, 135–138, 141–142, 27 L.Ed. 448] (1883). Thus, "[t]he general rule is

that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon,* 373 U.S. 57, 58 [83 S.Ct. 1052, 1052, 10 L.Ed.2d 191] (1963) (per curiam). And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief. See *Cory v. White,* 457 U.S. 85, 91 [102 S.Ct. 2325, 2329, 72 L.Ed.2d 694] (1982).

*Pennhurst* 465 U.S. at 100–102, 104 S.Ct. at 908–909.

In *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), heavily relied on by the Plaintiff, the Court established an exception to the immunity provision, but as the *Pennhurst* court explained, the exception has not been expanded:

> The Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State. This was the holing in *Ex parte Young,* 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908), in which a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment. This Court held that the Eleventh Amendment did not prohibit issuance of this injunction. The theory of the case was that an unconstitutional enactment is "void" and therefore does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States." *Id.,* at 160 [28 S.Ct. at 454]. Since the State could not authorize the action, the officer was "stripped of his official or representative character and [was] subjected in his person to the consequences of his individual conduct." *Ibid.*

While the rule permitting suits alleging conduct contrary to "the supreme authority of the United States" has survived, the theory of *Young* has not been provided an expansive interpretation. Thus in *Edelman v. Jordan,* 415 U.S. 651 [94 S.Ct. 1347, 39 L.Ed.2d 662] (1974), the Court emphasized that the Eleventh Amendment bars some forms of injunctive relief against state officials for violation of federal law. Id. at 666–667 [94 S.Ct. at 1357]. In particular, *Edelman* held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. Under the theory of *Young,* such a suit would not be one against the State since the federal-law allegation would strip the state officer of his official authority. Nevertheless, retroactive relief was barred by the Eleventh Amendment.

*Pennhurst* 465 U.S. at 102–103, 104 S.Ct. at 909.

■  In the case at hand, Envirotech argues that when a state official violates state law which results in the deprivation of an alleged property interest, a federal court's intervention is appropriate and the matter merits constitutional analysis under the fourteenth amendment due process clause. We can not agree with such a conclusion in light of the *Pennhurst* decision.

Specifically, the Plaintiff's argument mirrors the reasoning of the dissenting opinion of Justice Stevens in *Pennhurst.* Under that view, an allegation that official conduct is contrary to a state statute would suffice to override the State's protection from injunctive relief under the eleventh amendment because such conduct is ultra vires by exceeding the official's authority. *Pennhurst* 465 U.S. at 106, 104 S.Ct. at 911. The majority, however, countered such an argument and anticipated suits such as the one currently before this court by stating that Justice Stevens' opinion "... rests on fiction, is wrong on the law, and would emasculate the Eleventh Amendment." *Id.* Thus, the majority concluded that, at least insofar as injunctive relief is sought, an error of law by state officers acting in their official capacity will not suffice to override the sovereign immunity of the State where the relief effectively is against it. *Pennhurst* 465 U.S. at

106–117, 104 S.Ct. at 911–917. A claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the eleventh amendment and such a principle applies as well to state-law claims brought into federal court under pendent jurisdiction. *Id.*

Furthermore, on the importance of state sovereignty, the *Pennhurst* court commented as follows:

> The Court also has recognized, however, that the need to promote the supremacy of federal law must be accommodated to the constitutional immunity of the States. This is the significance of *Edelman v. Jordan,* supra. We recognized that the prospective relief authorized by *Young* "has permitted the Civil War Amendments to the Constitution to serve as a sword, rather than merely a shield, for those whom they were designed to protect." 415 U.S. at 664 [94 S.Ct. at 1356]. But we declined to extend the fiction of Young to encompass retroactive relief, for to do so would effectively eliminate the constitutional immunity of the States.

> Accordingly, we concluded that although the difference between permissible and impermissible relief "will not in many instances be that between day and night", 415 U.S., at 667 [94 S.Ct., at 1357,] an award of retroactive relief necessarily " 'fall[s] afoul of the Eleventh Amendment if that basic constitutional provision is to be conceived of as having any present force.' " Id., at 665 [94 S.Ct. at 1357] (quoting *Rothstein v. Wyman,* 467 F.2d 226, 237 (CA2 1972) (McGowan, J., sitting by designation), cert. denied, 411 U.S. 921 [93 S.Ct. 1552, 36 L.Ed.2d 315] (1973). In sum, *Edelman's* distinction between prospective and retroactive relief fulfills the underlying purpose of *Ex parte Young* while at the same time preserving to an important degree the constitutional immunity of the States.

> This need to reconcile competing interests is wholly absent, however, when a plaintiff alleges that a state official has violated state law. In such a case the entire basis for the doctrine of *Young*

and *Edelman* disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

*Pennhurst* 465 U.S. at 105–106, 104 S.Ct. at 910–911.

Envirotech has attempted to phase its claim in terms of a federal Constitutional issue by claiming that by allegedly violating state procedural provisions, the Defendants in turn deprived Envirotech of its federal right to due process under the fourteenth amendment. In reality, such a claim is not based on federal law and would only result in this court directing a state official on how to act in enforcing a state law. As the *Pennhurst* court stated:

> A plaintiff would need only to "claim an invasion of his legal rights" in order to override sovereign immunity. Id., [337 U.S.] at 693 [69 S.Ct. at 1463]. In the Court's view, the argument "confuse[d] the doctrine of sovereign immunity with the requirement that a plaintiff state a cause of action." *Id.,* at 692–693 [69 S.Ct. at 1463]. The dissent's theory suffers a like confusion. Under the dissent's view, a plaintiff would need only to claim a denial of rights protected or provided by statute in order to override sovereign immunity. Except in rare cases it would make the constitutional doctrine of sovereign immunity a nullity.

> The crucial element of the dissent's theory was also the plaintiff's central contention in *Larson* [*v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1947)]. It is that "[a] sovereign, like any other principal, cannot authorize its agent to vio-

late the law," so that when the agent does so he cannot be acting for the sovereign. *Post,* at 153 [104 S.Ct. at 936]; see also post, at 142, 148–149, 158 [104 S.Ct. at 930, 934, 939]; cf. *Larson, supra,* [337 U.S.] at 693–694 [69 S.Ct. at 1463] ("It is argued ... that the commission of a tort cannot be authorized by the sovereign.... It is on this contention that the respondent's position fundamentally rests ..."). It is a view of agency law that the Court in *Larson* explicitly rejected. *Larson* thus made clear that, at least insofar an injunctive relief is sought, an error of law by state officers acting in their official capacities will not suffice to override the sovereign immunity of the State where the relief effectively is against it. 337 U.S., at 690, 695 [69 S.Ct. at 1461, 1464]. Any resulting disadvantage to the plaintiff was "outweigh[ed]" by "the necessity of permitting the Government to carry out its functions unhampered by direct judicial intervention." *Id.,* at 704 [69 S.Ct. at 1468]. If anything, this public need is even greater when questions of federalism are involved. *See supra,* at 99–100 [104 S.Ct. at 907].

*Pennhurst* 465 U.S. at 112–114, 104 S.Ct. at 914–915.

We find that, in this case, the resulting economic hardship to Envirotech is "outweighed" by the necessity of the concepts of comity and federalism. Thus, the state government must be permitted to carry out its police power to regulate the health, safety, and welfare of its citizens "unhampered by direct judicial intervention" by the federal courts. Accordingly, we shall dismiss this matter since it is barred by the eleventh amendment from proceeding in federal court.

## V

Although we conclude that the jurisdictional bar of the eleventh amendment requires this court to dismiss this action, we also find merit in the Commonwealth's position that the Plaintiff can not prevail on the merits of its claim. *See* Defendants' Brief in Opposition to Injunctive Relief; Defendants' Motion to Dismiss.[8] The matters offered here do not rise to the level of a federal constitutional claim, and therefore, we shall also dismiss this suit on that alternative basis.[9]

### (A)

#### Legal Standard

■ The Plaintiff brings this suit pursuant to the federal Civil Rights Act, 42 U.S.C. § 1983, claiming that the Defendants violated Envirotech's rights to due process of law and equal protection under the 14th Amendment the United States Constitution.[10] Section 1983 reads, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, or regulation, custom or usage of any state or territory or the District of Columbia, subjects, or causes to be subject, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

---

8. Technically, when the Plaintiff filed an amended complaint on March 8, 1990, the Commonwealth's motion to dismiss dissolved and the proceeding began anew. We note, however, that the revisions to the complaint did not detract from the legal arguments by the Commonwealth both in its motion to dismiss and in the opposition brief to the requested injunction on the subject of probable success on the merits.

9. In their brief and at the hearing before this court, counsel for Envirotech raised the possibility of a claim under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901, *as amended.* The claim, however, was never plead in the original complaint or in the amended pleading submitted a day before the

March 9, 1990 hearing. We shall not dwell on this issue since it is presented seemingly as an afterthought and never fully briefed except by opposing counsel.

As the Commonwealth stressed in its reply brief, there would appear to be no private cause of action under RCRA for the Plaintiff to assert nor were the notice provisions of the Act followed. Doc. No. 11 at 4–5. Thus, we see no merit to the claim.

10. For an explanation of the role of § 1983 in federal litigation and why claims are technically not brought directly under the constitutional provisions that are allegedly violated, *see* Schwartz and Kirklin, *Section 1983 Litigation,* § 1.3 (1986).

by the Constitution and laws, shall be liable to the parties injured in an action at law, sued in equity, or other proper proceedings for redress ...

Thus, a federal court is authorized to grant judicial relief when an individual's federally protected rights are violated by a state or local official.

■ Generally, for a party to assert a cognizable claim under Section 1983, two elements must be satisfied:

(1) the plaintiff must allege that some person has deprived him of a federal right, and

(2) he must allege that the person who has deprived him of that right acted under color of state or territorial law.

*West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981) (overruled in part on other grounds), *Daniels v. Williams*, 474 U.S. 327, 330–331, 106 S.Ct. 662, 664–665, 88 L.Ed.2d 662 (1986) and *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).

In this case, various passages of the complaint assert a claim against all Defendants for violations of Envirotech's "rights to due process and equal protection as guaranteed by the Constitution of the United States and by the Act." Complaint at

¶¶ 29, 36, 62, 76, 77, and 93. Plaintiff believes that the actions of the Defendants are in violation of the Fourteenth Amendment to the U.S. Constitution, which provides, in relevant part:

... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S.C.A. Const. Amend. 14, § 1; *See also*, Plaintiff's Brief in Support, at 2 and 3. We shall examine each of Plaintiff's claims below.

(B)

Equal Protection

■ Envirotech contends that its treatment by the Defendants violated its right to equal protection under the Fourteenth Amendment. As developed by counsel for the Plaintiff at the hearing in this matter, the basis of this claim centers on the assertion that Envirotech has been treated differently than other applicants since it has fulfilled all of the regulatory requirements and yet has not received a permit like the other applicants. Such a claim, however, is not the "purposeful discrimination" that is the subject of an equal protection claim.[11]

---

11. When an action of the government effects a "fundamental" right such as interstate travel, privacy, voting, first amendment rights; a "suspect" grouping as race and national origin; or a "quasi-suspect" classification as gender, the court will take appropriate steps in analyzing the matter as an equal protection challenge. *Washington v. Seattle School District No. 1*, 458 U.S. 457, 102 S.Ct. 3187, 3188, 73 L.Ed.2d 896 (1982); *Cabar v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); *Cabell v. Chavez–Salido*, 454 U.S. 432, 102 S.Ct. 735, 70 L.Ed.2d 677 (1982); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

Judicial interpretation of any claim brought under the equal protection provision begins with a determination as to the suspect class to which the Plaintiff belongs. Our Third Circuit has held that "[f]or at its base level, the fourteenth amendment is

classification-oriented: ... it permits the state to draw distinctions between groups of similarly situated individuals provided that the

distinction is rationally drawn to address a legitimate purpose."

*Philadelphia Police and Fire Association for Handicapped Children, Inc., et al. vs. City of Philadelphia, et al.*, 874 F.2d 156 (3d Cir.1989), 874 F.2d at 162 (3d Cir. May 8, 1989) (Gibbons, C.J.).

As the appellate court indicates in *Philadelphia Police and Fire Assoc., supra*, at 162:

Historically, certain classifications have proven suspect or quasi-suspect because they almost always serve no legitimate government purpose or because they impact a group traditionally politically unable to protect itself. *See Plyler v. Doe*, 457 U.S. 202, 216–17 & n. 14 [102 S.Ct. 2382, 2394 & n. 14, 72 L.Ed.2d 786] (1982). Such classification signal courts asked to review legislation employing them to apply strict or heightened scrutiny to such laws. *Id.* These suspect or quasi-suspect classifications, however, represent a very limited exception to the general rule.

*Andrews v. City of Philadelphia,* 895 F.2d 1469, 1478 (3d Cir.1990) citing *Batson v. Kentucky,* 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986).

Even if the Defendants discriminated against the Plaintiff as alleged in its complaint, discrimination based exclusively upon personal differences or vindictive, malicious behavior are not the brand of discrimination the equal protection clause was designed to protect. *Heubschen v. Department of Health,* 716 F.2d 1167, 1171 (7th Cir.1983). In order to succeed on the merits, Envirotech must show intentional discrimination against it *because of the company's membership in a particular class, not merely that it was treated unfairly as an individual. Heubschen v. Department of Health,* 716 F.2d at 1171 (7th Cir.1983); *see also, Gray v. Lacke,* 698 F.Supp. 750, 755 (W.D.Pa.1988); *Cf. Gobla v. Crestwood School District,* 609 F.Supp. 972, 978 (M.D. Pa.1985); *Skadegaard v. Farrell,* 578 F.Supp. 1209, 220 (D.N.J.1984).

We find, therefore, that as to Plaintiff's equal protection claims, there has been no showing of manifest intentional discrimination or any irrational class distinction. *See generally, Palmer v. Merluzzi,* 868 F.2d 90, 96 (3d Cir.1990) citing L. Tribe, *American Constitutional Law,* § 16–2 (2d ed. 1988). Thus, Envirotech could not succeed on the merits of a challenge based on the equal protection clause.

### (C)

### Due Process of Law

■■■ As to the claims for due process, the first item is to determine whether a right to "life, liberty, or property" was denied, and if so, then what process was due. *See Palmer, supra.* In their brief, Plaintiff's counsel did not discuss the establishment of a property interest. However, at the hearing on March 9, 1990, counsel looked to the following provisions of Pennsylvania's Solid Waste Management Act [12] in establishing a property interest in obtaining a permit:

> § 1608.104. Powers and duties of the [Department of Environmental Resources].
>
> The department in consultation with the Department of Health regarding matters of public health significance shall have the power and its duty shall be to:
>
> (6) regulate the storage, collection, transportation, processing, treatment and disposal of solid waste;
>
> (7) issue permits, licenses and orders, and specify the terms and conditions thereof, and conduct inspections and abate public nuisances to implement the purposes and provisions of [the Solid Waste Management Act] and the rules, regulations and standards adopted pursuant to this act ...

35 P.S. § 6018.104.

Based on these statutory provisions [13], the Plaintiff argues that it had a reasonable expectation that after fulfilling all of the requirements to obtain a permit, DER was obligated to issue the permit. Thus, Envirotech had a valid and enforceable

---

Finally, the equal protection clause requires "reasonableness" in legislative and administrative classifications. Thus, the court will apply a "rational relationship test" to an appropriate equal protection challenge to legislation. *See Palmer v. Merluzzi,* 868 F.2d 90, 96 (3d Cir.1990) (Stapleton).

**12.** By act of the state legislature, the Solid Waste Management Act (hereinafter "SWMA") was passed on July 7, 1980. Among its eleven enumerate purposes, the Act is to

(3) require permits for the operation of municipal and residual waste processing and disposal systems, licenses for the transportation of hazardous waste and permits for hazardous waste storage, treatment, and disposal.

35 P.S. § 6018.102.
Under Article II of the Act, the legislature provided that:
... No person or municipality shall own or operate a municipal waste processing or disposal facility unless such person or municipality has first obtained a permit for such facility from the department.
35 P.S. § 6018.201(a).

**13.** Although the text of the SWMA has been cited, no argument was offered by either party as to the effect of regulations promulgated by the DER at 25 Pa.Code §§ 271.1–273.521 to establish or negate a property interest.

property interest in a solid waste disposal permit.

Counsel for the Defendants, however, both in their briefs submitted prior to the hearing as well as arguments in court, dispute that a property interest has been established. Citing the United States Supreme Court case of *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 260, 107 S.Ct. 1740, 1746, 95 L.Ed.2d 239 (1987), the Defendants maintain that there is no property interest in a permit but that it is a privilege. Nor does the state statute that empowers DER with the authority to issue permits create the reasonable expectation that would rise to the level of a property interest. It is within the discretion of the DER to determine whether an applicant has fulfilled the regulatory requirements to obtain a permit and if the department acted arbitrarily or capriciously, it is for the Environmental Review Board to determine on the administrative appeals route, not a federal court. Moreover, the Defendants' argued that until a party has the permit, no property right exists triggering due process requirements.

Although the matter is unclear, we need not definitively decide the issue of whether or not a permit is a property interest under SWMA since sufficient post deprivation procedures are provided to the Plaintiff— i.e., the Environmental Quality Board and the Common Pleas Court, under the *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) line of cases.

We do not see the circumstance of this case falling into the line of reasoning presented in *Zinermon v. Burch*, — U.S. ——, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), for even if taken as true, the activities of Mr. Shoener were not "foreseeable" nor would a pre-deprivation hearing be practical. Further, we hesitate to categorize the situation in this case as a "pre deprivation" since the Plaintiff's have not been "deprived" of their "property". The Defendants have not issued a formal denial of Plaintiff's application although it has manifested an intent to do so.

Moreover, both parties have acknowledged that there have been several meeting with the "technical staff" of DER and this court would be hard pressed to say that due process was denied. The provisions of the SWMA, including the appeal process from the denial of an application, provides a party with notice and an opportunity to be heard. The constitutional deprivation does not occur when a state administrator or department fails to dot every "i" or cross every "t" in enforcing complex state regulations. If a random procedural violation of a state regulation does occur, it is not necessarily a violation of federal constitutional law, but rather, a matter under the jurisdiction of the state judiciary.

## VI

### Conclusion

It is the decision of this court that Plaintiff's claim is barred by the eleventh amendment to the Constitution. Principles of comity prohibit this court from acting to enjoin state actors from violating state law. Rather, that is the prerogative of the state courts to act upon.

Moreover, assuming the position of Plaintiff is correct, intervention by this court is inappropriate since the allegations do not rise to the level of a constitutional deprivation. At this juncture of the state administrative proceeding, the Plaintiff has two alternatives: (1) start the application process over and reapply for a permit; or (2) appeal the administrative decision to the Environmental Review Board as directed by the SWMA.

Plaintiff insists that neither of these alternatives is economically feasible. They argue that to start the process anew would be so costly and time-consuming as to put them out of business. Moreover, an appeal to the Environmental Review Board would result in the same because it is a slow process that it would essentially be too costly. They must face the fact, however, that even though the State's process might be cumbersome and burdensome, that is not in itself enough to be considered a violation of one's federal Constitutional rights or statutory rights under Section 1983. The fact that to gain a permit or a

right to operate is costly and time-consuming is not, in this court's judgment, sufficient to justify injunctive relief nor does it raise a federal Constitutional question.

Accordingly, Plaintiff's request for injunctive relief is denied and this matter is dismissed.